FILED

APR 1 6 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
          DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HUTCHINS, NANNETTE STROMBERG, JOAHANNA CZERNY, CORA FEDORNOCK, ANGELA COMER, <br><br>            Plaintiffs, <br><br>     v. <br><br> UNITED STATES OF AMERICA, SECRETARY OF THE DEPARTMENT OF EDUCATION, EDUCATIONAL CREDIT MANAGEMENT CORPORATION, CALIFORNIA STUDENT AID COMMISSION, PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, DIANE SPADONI, SHIRLEY AMEY, CHARLES HUNDLEY, PEGGY MILK, and DOES 1-4, <br><br>            Defendants. | CIV-F-02-6256 OWW DLB <br><br> MEMORANDUM OPINION AND ORDER RE: DEFENDANTS' MOTIONS TO DISMISS UNDER RULE 12(b)(1) AND RULE 12(b)(6) OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT UNDER RULE 56 AND REQUEST FOR JUDICIAL NOTICE |

## I.   INTRODUCTION

Before the court is:  (1) Defendants' California Student Aid Commission ("CSAC") and Pennsylvania Higher Education Assistance Agency's ("PHEAA") request for judicial notice (Doc. 23, filed Apr. 24, 2003), and motion to dismiss with prejudice, or in the alternative, motion for summary judgment as to Claims Two, Four, Five and Six (Doc. 20, filed Apr. 24, 2003 ("CSAC/PHEAA

1



1   Motion")); (2) Defendant Educational Credit Management

2   Corporation's ("ECMC") motion to dismiss Claims Two, Four, Five

3   and Six (Doc.28, filed Apr. 24, 2003 ("ECMC Motion")); (3) motion

4   to dismiss Claim Five by Defendants Charles Hundley and Peggy

5   Milk (Doc. 32, filed Apr. 24, 2003 ("Hundley/Milk Motion")); and

6   (4) Defendant USA's motion to dismiss Claims Two, Three, Four,

7   Five and Six (Doc. 34, filed Apr. 25, 2003 ("USA Motion")) of

8   Plaintiffs' first amended complaint.  Doc. 14, filed Jan. 23,

9   2003 ("Amended Complaint").  Claim One of the first amended

10  complaint was dismissed by stipulation of the parties on April 3,

11  2003.  Doc. 16.

12       On June 24, 2003, Plaintiffs filed opposition to the

13  Hundley/Milk Motion.  Doc. 45 ("Opposition to Hundley/Milk").  On

14  July 1, 2003, Plaintiffs filed opposition to the ECMC Motion.

15  Doc. 46 ("Opposition to ECMC").  On July 10, 2003, Plaintiffs

16  filed opposition to the USA Motion.  Doc. 48 ("Opposition to

17  USA").  On July 14, 2003, Plaintiffs filed opposition to the

18  CSAC/PHEAA Motion.  Doc. 52 ("Opposition to CSAC/PHEAA").  On

19  July 14, 2003, Plaintiffs filed opposition to paragraph two of

20  CSAC/PHEAA's request for judicial notice.  Doc. 49 ("Objection to

21  Judicial Notice").  On August 15, Defendant ECMC replied to

22  Plaintiffs' Opposition to ECMC.  Doc. 54 ("ECMC Reply").

23  Defendants Charles Hundley and Peggy Milk replied to Plaintiffs'

24  Opposition to Hundley/Milk on August 15, 2003.  Doc. 55

25  ("Hundley/Milk  Reply").  USA replied to Plaintiffs' Opposition

26  to USA on August 15, 2003 ("USA Reply").  On August 15, 2003,

27  Defendants CSAC and PHEAA filed a reply to Plaintiffs' Opposition

28  to CSAC/PHEAA.  Doc. 64 ("CSAC/PHEAA Reply").

II.    UNDISPUTED FACTS LISTED BY DEFENDANTS CSAC/PHEAA
AND ADMITTED BY PLAINTIFFS

2.    In 1995 and 1996, Czerny defaulted on each of her federally insured student loans.

3.    Plaintiff Czerny's defaulted loans were certified for collection through the interception of her California state tax refund from the California Franchise Tax Board.

5.    CSAC intercepted plaintiff Czerny's Federal Income tax refunds for calendar years, 1997, 1998, 2000, and 2001.

6.    CSAC has never collected any California state tax refund offsets through the California Franchise Tax Board as a credit against Czerny's defaulted loans.

8.    On or about January 30, 2003, Plaintiff Czerny's defaulted student loans were subrogated to the Department.    CSAC does not presently hold Czerny's defaulted student loans.

10.    Plaintiff Stomberg's wages have been garnished since December 2001 pursuant to the wage garnishment order.

11.    PHEAA has never sent any "notice" of its intent to offset plaintiff Stromberg's State of California tax refund through the California Franchise Tax Board.

12.    PHEAA has not offset Plaintiff Stromberg's California state tax refund as a credit against her defaulted student loan.

III.    BACKGROUND

Plaintiffs have defaulted on obligations for their federally-guaranteed student loans (hereinafter collectively referred to as "defaulted student loans").    Defendant USA, operating through the Secretary of Education, is a guarantor of

1   Plaintiffs' defaulted student loans.  Defendants CSAC, PHEAA and
2   ECMC are guaranty agencies responsible for enforcing collections
3   on the defaulted student loans through administrative offset and
4   wage garnishment provisions of the Higher Education Act (HEA).
5   ECMC is authorized by the Secretary of Education to conduct
6   independent hearings regarding administrative wage garnishment by
7   other guaranty agencies.  Amended Complaint at 2-5.  Defendants
8   Charles Hundley and Peggy Milk were, at all times relevant
9   hereto, ECMC hearing officers conducting administration hearings
10  for wage garnishments and assessment of collection costs for
11  defaulted student loans.  *Id.* at 6.

12      Plaintiffs allege that the various rules, laws and practices
13  of the USA, guaranty agencies, and hearing officers violate
14  federal law[1] and Plaintiffs' constitutional rights as protected
15  by the 1st, 4th, 5th and 14th Amendments of the United States
16  Constitution.  *Id.*  Specifically, Plaintiffs argue that
17  Defendants' have failed to provide fair notice and opportunity to
18  be heard prior to an administrative order for the garnishment of
19  wages and assessment of collection costs to satisfy obligations
20  under the federally-guaranteed student loans in violation of
21  their 4th, 5th and 14th Amendment rights to due process and to be
22  free from unreasonable seizure of property.  *Id.*  Plaintiffs
23  allege that Defendant's requirement that they sign a sworn

24  _____

25      [1]Plaintiffs allege that Defendants' conduct violates 5
26  U.S.C. § 504, 15 U.S.C. § 1692, 18 U.S.C. § 1961, 20 U.S.C. §§
    1078, 1095a,  31 U.S.C. §§ 3716, 3720a, 42 U.S.C. §§ 1983, 1985,
27  1986 and 34 C.F.R. § 682.410(b).  Plaintiffs allege that 20
    U.S.C. § 1082(a) and 34 C.F.R. § 30.60 are unconstitutional as
28  applied.  *See generally* First Amended Complaint.

4

1   statement, violates their right to the free exercise of religion

2   under the 1st Amendment.  *Id*.  Plaintiffs seek injunctive relief,

3   a refund of monies taken pursuant to administrative orders of

4   garnishment and collection costs, as well as money damages for

5   the alleged constitutional violations.

6       Defendants CSAC, PHEAA, ECMC and USA seek to dismiss on the

7   ground that governing law and regulations mandate the procedures

8   Defendants carry out, that those laws and regulations are

9   constitutional, and that Plaintiffs fail to state a claim that

10  they have violated any constitutional rights of the Plaintiffs.

11  *See generally* CSAC/PHEAA Motion, ECMC Motion and USA Motion.

12  Defendants Hundley, Milk, USA, CSAC and PHEAA also seek dismissal

13  on the basis of immunity.  *See generally* Hundley/Milk Motion, USA

14  Motion, and CSAC/PHEAA Motion.

15      Defendants CSAC and PHEAA seek judicial notice of an order

16  of this court dated September 21, 2000, in the matter of *George*

17  *v. United States*, Case No. F-99-6812 and of all papers filed with

18  the court in reference thereto.  *See* Request for Judicial Notice

19  at 2.  Plaintiffs oppose Defendants' request for judicial notice

20  of "all papers" filed with the court in the above-referenced

21  matter.  *See* Objection to Judicial Notice at 2.  Defendants CSAC

22  and PHEAA argue that Plaintiffs are judicially estopped from

23  raising some or all of the claims set forth in the within

24  complaint.  *See* Doc. 60, Response to Objection to Judicial Notice

25  at 2, filed Aug. 15, 2003.

26  ///

27  ///

28  ///

5

1

IV.   SUMMARY OF ARGUMENTS PRESENTED

2

A.   MOTION # 1:  PHEAA/CSAC'S MOTION TO DISMISS PLAINTIFFS'
     COMPLAINT OR, ALTERNATIVELY FOR SUMMARY JUDGMENT

3

4

    1.   PHEAA/CSAC'S Motion to Dismiss (Doc. 20) Argues
          Plaintiffs' Complaint Should Be Dismissed As To
          PHEAA/CSAC Because:

5

6

(a) The collection cost statutes and regulations applicable

7

to Plaintiffs' federally-guaranteed student loans are

8

constitutionally valid and do not violate Plaintiffs' 5th or 14th

9

Amendment rights to due process or constitute an unreasonable

10

seizure under the 4th Amendment.  Doc. 20 at 28-34.

11

(b) The notice and hearing requirements of the statutes and

12

regulations which authorize the garnishment of wages, tax refund

13

offset and social security benefit offset for debt owed on a

14

federally-guaranteed student loan are constitutionally valid and

15

do not violate Plaintiffs' rights to due process under the 5th or

16

14th Amendment or constitute an unreasonable seizure under the

17

4th Amendment.  Doc. 20 43-50, 63-68.

18

(c) Even if CSAC and PHEAA violated the collection cost

19

and/or notice and hearing requirement statutes and regulations,

20

HEA does not create a private cause of action and the APA does

21

not apply to the collection procedures of CSAC and PHEAA.  Doc.

22

20 at 39-40, 51-55.

23

(d) Plaintiffs fail to state a claim under the RICO laws.

24

Doc. 20 at 55-57.

25

(e) Plaintiffs fail to state a 1st Amendment claim.  Doc. 20

26

at 68-70.

27

(f) PHEAA and CSAC are entitled to immunity.

28

6

2. <u>Plaintiffs' Opposition (Doc. 52) to PHEAA/CSAC's
Motion to Dismiss</u>:

(a) Plaintiffs were denied due process and subjected to unreasonable seizure in violation of the 4th, 5th and 14th Amendments because the notice and hearing requirements and collection cost statutes and regulations concerning federally-guaranteed student loans, *as utilized by Defendants CSAC/PHEAA*, are constitutionally defective because the collection costs were unreasonable and the notice and hearing procedures provided were insufficient, denied debtors discovery, and involved improper ex parte relationships. Doc. 52 generally.

(b) Plaintiffs 1st Amendment right to free exercise of religion was violated by PHEAA/CSAC's form which required Plaintiffs to swear an oath. Doc. 52 at 7-8.

(c) Defendants' conduct and misleading statements in the notice and hearing forms constitute mail fraud and are grounds for a RICO claim. Doc. 52 at 37-38.

(d) Doc. 52 at 50. Plaintiffs request Claim Two be stricken.

(e) Plaintiffs argue that immunity would unjustly deny relief and request opportunity to amend the complaint to name individual officers of PHEAA and CSAC.

3. <u>PHEAA/CSAC's Reply (Doc. 64) to Plaintiffs'
Opposition</u>:

(a) Plaintiffs' inability to credibly dispute the legal arguments advanced by Defendants and failure to define the precise nature and scope of relief sought evidences the First

1    Amended Complaint lacks merit.

2        (b) The notice and hearing and collection costs provided by

3    the statutes and regulations concerning federally-guaranteed

4    student loans and, as applied by the Defendants to Plaintiffs,

5    are constitutionally sufficient, do not effect an unreasonable

6    seizure, and provide adequate due process.

7        (c) Independent audits and the potential for civil penalties

8    under 20 U.S.C. § 1082(g) and 34 C.F.R. § 682.413 provide

9    adequate means of ensuring that guaranty agencies comply with the

10   requirements of the HEA and FFELP.  Doc. 64 at 19.

11       (d) Plaintiffs should be denied leave to amend as their

12   request for amendment by Opposition was improper, amendment would

13   cause Defendants undue prejudice, and any amendment would be

14   futile.

15

16       B.    MOTION #2: ECMC's MOTION TO DISMISS PLAINTIFFS'
17             COMPLAINT

18             1.    ECMC's Motion to Dismiss Plaintiffs' Complaint
                     (Doc. 28) Argues:

19       (a) The collection cost, notice and hearing requirements of

20   the statutes and regulations affecting federally-guaranteed

21   student loans, as applied by Defendants, are not unreasonable

22   seizures of property and afford Plaintiffs due process. Doc. 28

23   at 9-12, 22-24.

24       (b) ECMC cannot be held liable for complying with the

25   Department's Regulations.  Doc. 28 at 12-15.

26       (c) 20 U.S.C. § 1095a does not create a private right of

27   action for damages.  Doc. 28 at 13.

28       (d) Plaintiffs fail to state a claim under RICO, Fair Dept

Collection Practices Act ("FDCPA"), 42 U.S.C. §§ 1983, 1985 and 1986, or the Administrative Procedures Act ("APA").  Doc. 28 at 16-22.

   2. **Plaintiffs' Opposition (Doc. 46) to ECMC's Motion:**

  (a) Plaintiffs were denied due process and subjected to unreasonable seizure in violation of the 4th, 5th and 14th Amendments because the notice and hearing requirements and collection cost statutes and regulations concerning federally-guaranteed student loans, *as applied by Defendant ECMC*, are constitutionally defective because the collection costs were unreasonable and the notice and hearing procedures provided were insufficient, denied the opportunity for a hearing three times, denied discovery, misstated the Plaintiffs' rights and burden of proof and involved improper ex parte relationships and/or political influence.  Doc. 46 generally.

  (b) Plaintiffs 1st Amendment right to free exercise of religion was violated by ECMC's form which required Plaintiffs to swear an oath.  Doc. 46 at 31-32.

  (c) Plaintiffs request opportunity to amend the complaint to substitute claims stated under 42 U.S.C. §§ 1983, 1985 and 1986 with *Bivens* claims.  Doc. 46 at 33.

  (d) Plaintiffs argue that ECMC is subject to the FDCPA, Doc. 46 at 44-47 and that, when the ECMC acts on behalf of the Secretary, the ECMC is an agent subject to the APA.  Doc.  46 at 48-50.

  (e) Plaintiffs argue that Defendants' notice and hearing forms sent via U.S.Mail were so false and misleading that they

constituted a scheme to defraud Plaintiffs in violation of RICO. Doc. 46 at 51-52.

(f) Plaintiffs argue that 20 U.S.C. § 1095a must create a private cause of action because Congress didn't realize, at the time they created the statute, that the Defendant Secretary would not discipline guaranty agencies for violating the law.  Doc. 46 at 52.

3.   ECMC's Reply (Doc. 54) to Plaintiffs' Opposition:

(a) The notice and hearing and collection costs provided by the statutes and regulations concerning federally-guaranteed student loans and, as applied by the Defendant ECMC to Plaintiffs, are constitutionally sufficient, do not constitute an unreasonable seizure, and provide adequate due process.  Doc. 54 at 12, 18-23, 34-39.

(b) Plaintiffs' request to amend the complaint should be denied because amendment would be futile.  Doc. 54 at 12-18.

(c) Plaintiffs concede that their claims under 42 U.S.C. §§ 1983, 1985 and 1986 should be dismissed.  Doc. 54 at 24.

(d) ECMC is a "fiduciary" of the Department of Education and, therefore, not subject to the FDCPA.  Doc. 54 at 24-27.

(e) ECMC is not subject to the APA because it has no power to promulgate rules or procedures under the APA and is not an "agency" as defined at 44 U.S.C. § 1501.

(f) Plaintiffs fail to state a RICO claim.  Doc. 54 at 28-30.

(g) No private right of action should be implied under 20 U.S.C. § 1095a.  Doc. 54 at 30-34.

1    C.    **MOTION #3: HUNDLEY/MILK'S MOTION TO DISMISS**

2         1.    **Defendants Hundley/Milk move to dismiss on the**
              **following grounds (Doc. 32)**:
3

4         (a) Hundley/Milk, as adjudicative officers, are absolutely

5    immune from suit under the doctrine of judicial immunity.  Doc.

6    32 at 6-8.

7         (b) Even if Hundley/Milk were not immune from suit,

8    challenges to the constitutionality of a statute or regulation is

9    beyond the power of an agency to review and, therefore,

10   Hundley/Milk cannot be liable for refusing to do so.  Doc. 32 at

11   8.

12        (c) Hundley/Milk rely on the arguments made by co-defendants

13   that Plaintiffs fail to state a claim.

14

15        2.    **Plaintiffs' Opposition (Doc. 45) to Hundley/Milk**
              **Motion Argues**:
16

17        (a) Hundley/Milk are not subject to absolute immunity

18   because they are actually acting as advocates for ECMC when

19   rendering outcomes unfavorable to Plaintiffs.  Doc. 45 at 15-21.

20        (b) Hundley/Milk had improper ex parte relationships and

21   political influence and thereby rendered biased decisions.  Doc.

22   45 at 13-15.

23

24        3.    **Hundley/Milk's Reply (Doc. 55) Argues**:

25        (a) While Hundley/Milk do not have all the powers granted

26   administrative law judges, they have sufficient powers to warrant

27   application of judicial immunity.  Doc. 55 at 10-13.

28        (b) The decisions of Hundley/Milk were based on the evidence

1  (not any improper ex parte relationship or political bias).

2      (c)  Plaintiffs' *Bivens* claims are time-barred and

3  Hundley/Milk are improper defendants thereunder.   Doc. 55 at 16-

4  25.

5

6  D.   MOTION #4: USA's MOTION TO DISMISS PLAINTIFFS' COMPLAINT

7      1.   USA argues Plaintiffs' complaint should be
        dismissed (Doc. 34) because:

8

9      (a) The Department of Education does not participate in the

10  State Tax Refund Offset Program.   Doc. 34 at 12.

11      (b) The collection cost, notice and hearing requirements of

12  the statutes and regulations affecting federally-guaranteed

13  student loans, as applied by the Department of Education, are not

14  unreasonable seizures of property and afford Plaintiffs due

15  process.   Doc. 34 generally.

16      (c) The Department of Education is immune from suit under

17  RICO and civil rights claims.   Doc. 34 at 87-89.

18      (d) The Department of Education is exempt from the FDCPA.

19  Doc. 34 at 89-90.

20

21      2.   Plaintiffs' Opposition (Doc. 48) to USA's Motion
        to Dismiss Asserts:

22

23      (a) Plaintiffs were denied due process and subject to

24  unreasonable seizure in violation of the 4th, 5th and 14th

25  Amendments because the notice and hearing requirements and

26  collection cost statutes and regulations concerning federally-

27  guaranteed student loans, *as applied*, are constitutionally

28  defective because the collection costs were unreasonable and the

12

notice and hearing procedures provided were insufficient, denied the opportunity for a hearing three times, denied discovery, misstated the Plaintiffs' rights and burden of proof and involved improper ex parte relationships and/or political influence.  Doc. 48 generally.

(b) The word "Swear" in the "Request for Hearing Form" violates Plaintiffs' right to free exercise of religion under the 1st Amendment.  Doc. 48 at 6-8.

(c) Plaintiffs concede that sovereign immunity bars their RICO and civil rights claims.  Doc. 48 at 8.

(d) Plaintiff *appears to* concede that Fedornocks claims should be dismissed because she sent the demand for hearing to the wrong address.  Doc. 48 at 9.

(e) Plaintiffs concede that the Department of Education is exempt from the FDCPA.  Doc. 48 at 9.

(f) Plaintiff seeks to amend the complaint to assert *Bivens* claims.  Doc. 48 at 10.

(g) Plaintiff argues that the Department of Education concedes that a private right of action should be implied under the HEA.  Doc. 48 at 21.

(h) Plaintiff *appears to* concede that the Department of Education's Motion to Dismiss should be granted.  Doc. 48 at 21.


3.   USA's Reply (Doc. 56) to Plaintiffs' Opposition Argues:

(a) HEA § 488A contains an implied right of action for judicial review of guaranty agency action.  Doc. 56 at 3-12.

(b) The notice and hearing and collection costs provided by

1   the statutes and regulations concerning federally-guaranteed

2   student loans, *as they are applied*, are constitutionally

3   sufficient, do not constitute an unreasonable seizure, and

4   provide adequate due process.  Doc. 56 at 13-32.

5         (c) Hearing officials are entitled to judicial immunity.

6   Doc. 56 at 33-42.

7         (d) Requiring a sworn statement does not violate Plaintiffs'

8   First Amendment rights.  Doc. 56 at 43-46.

9

10       E.    ALTERNATIVE ARGUMENT PRESENTED BY PLAINTIFFS AT ORAL

11             ARGUMENT

12       At oral argument, Plaintiffs' counsel represented that

13   essentially all of the claims for RICO violations, and for any

14   and all claims against PHEAA, CSAC, ECMC, and the individual

15   hearing officers (Hundley, Milk, Spadoni, and Amey) under 42

16   U.S.C. §§ 1983, 1985, and 1986 would be withdrawn in the event

17   the court found that final collection cost and wage garnishment

18   determinations, made by independent agencies pursuant to the HEA,

19   are subject to APA-type judicial review.  At oral argument,

20   counsel for the United States conceded that judicial review

21   pursuant to the APA was appropriate and requested, and was

22   granted, permission to submit a supplemental brief to the court

23   on that subject.  Following oral argument, the Secretary has

24   withdrawn its position that judicial review of HEA collection

25   cost and wage garnishment determinations under the APA is proper

26   and has declined to file any additional papers.

27   ///

28   ///

14

1

## V.   LEGAL STANDARDS

2

### A.   SUBJECT MATTER JURISDICTION

3    The Court "ha[s] an independent obligation to address *sua*

4  *sponte* whether [it] has subject-matter jurisdiction."  *Dittman v.*

5  *California*, 191 F.3d 1020, 1025 (9th Cir. 1999).  United States

6  District Courts have jurisdiction over cases in which the United

7  States is a party.  28 U.S.C. § 1345.  The United States District

8  Courts also have original jurisdiction over any civil action

9  based "upon any express or implied contract with the United

10  States" under 28 U.S.C. § 1346(a)(2).  Further, 16 U.S.C. § 825p

11  creates jurisdiction in the federal district courts to hear

12  liability disputes arising out of the FPA.  "The District Courts

13  of the United States ... shall have exclusive jurisdiction ... of

14  all suits in equity and actions at law brought to enforce any

15  liability or duty created by, or to enjoin any violation of, [the

16  FPA]."  16 U.S.C. § 825p (1988).

17

18

### B.   JUDICIAL NOTICE

19    "A judicially noticed fact must be one not subject to

20  reasonable dispute in that it is either (1) generally known

21  within the territorial jurisdiction of the trial court or

22  (2) capable of accurate and ready determination by resort to

23  sources whose accuracy cannot reasonably be questioned."  Fed. R.

24  Evid. 201(b).  "A court shall take judicial notice if requested

25  by a party and supplied with the necessary information."  Fed. R.

26  Evid. 201(d).

27    Judicially noticed facts often consist of matters of public

28  record, such as prior court proceedings, *see, e.g., Emrich v.*

*Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988)

(administrative materials), *Barron v. Reich*, 13 F.3d 1370, 1377

(9th Cir. 1994) (city ordinances), *Toney v. Burris*, 829 F.2d 622,

626-27 (7th Cir. 1987) (city ordinances and official maps),

*Aiello v. Town of Brookhaven*, 136 F. Supp. 2d 81, 86 n.8

(E.D.N.Y. 2001) (geological surveys and existing land use maps),

and *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking

judicial notice of a filed complaint as a public record).

Federal courts may "take notice of proceedings in other

courts, both within and without the federal judicial system, if

those proceedings have a direct relation to the matters at

issue." *U.S. ex rel Robinson Rancheria Citizens Council v.

Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).


C.   RULE 12(b)(1) MOTION TO DISMISS

Rule 12(b)(1) of the Federal Rules of Civil Procedure

provides for a motion to dismiss for lack of subject matter

jurisdiction.  It is a fundamental precept that federal courts

are courts of limited jurisdiction.  Limits upon federal

jurisdiction must not be disregarded or evaded.  *Owen Equipment &

Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  The plaintiff

has the burden to establish that subject matter jurisdiction is

proper.  *Kokkonen v. Guardian Life Ins. Co.*, 114 S. Ct. 1673,

1675 (1994).  This burden, at the pleading stage, must be met by

pleading sufficient allegations to show a proper basis for the

court to assert subject matter jurisdiction over the action.

*McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189

(1936); Fed. R. Civ. P. 8(a)(1).

1    When a defendant challenges jurisdiction *facially*, all
2  material allegations in the complaint are assumed true, and the
3  question for the court is whether the lack of federal
4  jurisdiction appears from the face of the pleading itself.
5  *Thornhill Publishing Co. v. General Telephone Electronics*, 594
6  F.2d 730, 733 (9th Cir. 1979); *Mortensen v. First Fed. Sav. &
7  Loan Ass'n*, 549 F. 2d 884, 891 (3d Cir.1977); *Cervantez v.
8  Sullivan*, 719 F. Supp. 899, 903 (E.D. Cal.1989), *rev'd on other
9  grounds*, 963 F. 2d 229 (9th Cir.1992).   A defendant may also
10 attack the existence of subject matter jurisdiction apart from
11 the pleadings. *Mortensen*, 549 F. 2d at 891.   In such a case, the
12 court may rely on evidence extrinsic to the pleadings and resolve
13 factual disputes relating to jurisdiction. *St. Clair v. City of
14 Chico*, 880 F. 2d 199, 201 (9th Cir.1989); *Roberts v. Corrothers*,
15 812 F.2d 1173, 1177 (9th Cir.1987); *Augustine v. United States*,
16 704 F.2d 1074, 1077 (9th Cir.1983).   "No presumptive truthfulness
17 attaches to plaintiff's allegations, and the existence of
18 disputed material facts will not preclude the trial court from
19 evaluating for itself the merits of jurisdictional claims."
20 *Thornhill Publishing*, 594 F.2d at 733 (quoting *Mortensen*, 549
21 F.2d at 891).

22    "Federal courts have original jurisdiction over all civil
23 actions that 'arise under' the Constitution or laws of the United
24 States." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir.2002) citing
25 28 U.S.C. § 1331.   "Most federal-question jurisdiction cases are
26 those in which federal law creates a cause of action." *Wander v.
27 Kaus*, 304 F.3d 856, 858 (9th Cir.2002) citing *Merrell Dow Pharms.
28 Inc. v. Thompson*, 478 U.S. 804, 808 (1986).   "A case 'arises

17

under' federal law either where federal law creates the cause of action or 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-1089 (9th Cir.2002) citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8-9,(1983) (citations omitted).

"[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1089 (9th Cir.2002) citing *Rivet v. Regions Bank*, 522 U.S. 470, 475 (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)) (internal quotation marks omitted).

Failure to plead a specific federal law statute, however, is not "fatal." *See Mir v. Fosburg*, 646 F.2d 342, 346-347 (9th Cir. 1980). "Failure to allege specifically the statute conferring jurisdiction is not always fatal to an action if the facts showing jurisdiction appears in the complaint." *Id*. citing *Andrus v. Charlestone Stone Products Co.*, 436 U.S. 604, 607-08 n.6 (1978); *Fidelity & Casualty Co. v. Reserve Insurance Co.*, 596 F.2d 914, 918 (9th Cir. 1979); *Harary v. Blumenthal*, 555 F.2d 1113 (2d Cir. 1977); C. Wright & A. Miller, Federal Practice & Procedure § 1209-1210 (1969); *see also Whitner v. Davis*, 410 F.2d 24 (9thCir.1969) (Where complaint plainly indicated that plaintiff intended to invoke Civil Rights Act, failure of plaintiff to cite statute which gave court jurisdiction in her complaint was of no consequence.).

D.   <u>RULE 12(b)(6) MOTION TO DISMISS</u>

In determining whether a complaint is sufficient to withstand a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996). *See also Miree v. DeKalb County*, 433 U.S. 25, 27 n.2 (1977). A complaint "should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)(citations omitted); *see also Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (issue is not whether plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claim). In deciding a motion to dismiss, the court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002).

The court need not accept as true, allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987). For example, matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies, *see Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986), while conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted. *See Western Mining Council v. Watt*, 643 F.2d 618, 624

1  (9th Cir. 1981); *see also Branch v. Tunnell*, 14 F.3d 449, 453

2  (9th Cir. 1994) ("[A] document is not 'outside' the complaint if

3  the complaint specifically refers to the document and if its

4  authenticity is not questioned."). Allegations in the complaint

5  may be disregarded if contradicted by facts established by

6  exhibits attached to the complaint. *See Durning v. First Boston*

7  *Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

8      A complaint cannot be dismissed on a Rule 12(b)(6) motion

9  for failure to state a claim "unless it appears beyond doubt that

10 the plaintiff can prove no set of facts in support of his claims

11 which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d

12 813, 813 (9th Cir. 1994) (citing *Buckey v. County of Los Angeles*,

13 957 F.2d 652, 654 (9th Cir. 1992). *E.g., Conley v. Gibson*, 355

14 U.S. 41, 47 (1957); *Parks School Of Business v. Symington*, 51

15 F.3d 1480, 1484 (9th Cir. 1995); and *West Mining Council v. Watt*,

16 643 F.2d 618, 624(9th Cir. 1981).

17     Even when it appears "on the face of the pleadings that a

18 recovery is very remote and unlikely," a motion to dismiss is

19 inappropriate if sufficient facts are alleged which, if proven,

20 would entitle plaintiff to relief. *Scheuer v. Rhodes*, 416 U.S.

21 232, 236 (1974). *Accord Gilligan v. Jamco Dev. Corp.*, 108 F.3d

22 246 at 249 (9th Cir. 1997). "The issue is not whether the

23 plaintiff will ultimately prevail but whether the claimant is

24 entitled to offer evidence to support the claims." *Scheuer* at

25 236.

26     Pleadings under the federal rules require only a "short and

27 plain statement of the claim showing that the pleader is entitled

28 to relief." Fed. R. Civ. P. Rule 8(a). Courts have recognized

1 | that Rule 8(a) "contains a powerful presumption against rejecting
2 | pleadings for failure to state a claim." *Gilligan*, 108 F.3d at
3 | 249.   "All that is required are sufficient allegations to put
4 | defendants fairly on notice of the claims against them."
5 | *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991) (citing
6 | *Conley*, 355 U.S. at 47; 5 C. Wright & A. Miller, *Federal Practice*
7 | *& Procedure* § 1202 (2d ed. 1990)).   Any facts pled generally are
8 | to be credited as embracing "whatever specific facts might be
9 | necessary to support [the claims]." *Peloza v. Capistrano Unified*
10 | *Sch. Dist.*, 37 F.3d 517, 521 (9th Cir.1994), *cert. denied*, 515
11 | U.S. 1173 (1995).

12 | The district court cannot consider whether "the plaintiff
13 | can prove facts *different* from those alleged in the complaint."
14 | *McGrath v. Scott*, 250 F.Supp.2d 1218 at 1220 (citing *Associated*
15 | *Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459
16 | U.S. 519, 526 (1983)).

17 | There are essentially three situations where dismissal for
18 | failure to state a claim is proper.   A Rule 12(b)(6) dismissal
19 | may be based on "the lack of a cognizable legal theory or [on]
20 | the absence of sufficient facts alleged under a cognizable legal
21 | theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699
22 | (9th Cir. 1988).   Dismissal is also proper when, under the facts
23 | alleged in the complaint, defendant would be entitled to an
24 | absolute defense or bar to recovery. *See Weisbuch v. County of*
25 | *L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).

26 |
27 | E.   <u>SUMMARY JUDGMENT</u>
28 | Summary judgment is appropriate only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Maffei v. Northern Ins. Co. of New York*, 12 F.3d 892, 899 (9th Cir. 1993). A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986). The non-moving party cannot simply rest on its allegation without any significant probative evidence tending to support the complaint. *See U.A. Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1995).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The more implausible the claim or defense asserted by the opposing party, the more persuasive its evidence must be to avoid summary judgment. *See United States ex rel. Anderson v. Northern Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1996). Nevertheless, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." *Liberty Lobby*, 477 U.S. at 255. A court's role on summary judgment,

however, is not to weigh the evidence, *i.e.*, issue resolution,
but rather to find genuine factual issues. *See Abdul-Jabbar v.
General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996).

Evidence submitted in support of or in opposition to a
motion for summary judgment must be admissible under the standard
articulated in 56(e). *See Keenan v. Hall,* 83 F.3d 1083, 1090 n.1
(9th Cir. 1996); *Anheuser-Busch, Inc. v. Nat'l Beverage
Distribs.*, 69 F.3d 337, 345 n.4 (9th Cir. 1995).  Properly
authenticated documents, including discovery documents, although
such documents are not admissible in that form at trial, can be
used in a motion for summary judgment if appropriately
authenticated by affidavit or declaration. *See United States v.
One Parcel of Real Property*, 904 F.2d 487, 491-492 (9th Cir.
1990).  Supporting and opposing affidavits must be made on
personal knowledge, shall set forth such facts as would be
admissible in evidence, and shall show affirmatively that the
affiant is competent to testify to the matters stated therein.
*See* Fed. R. Civ. P. 56(e); *Connor v. Sakai*, 15 F.3d 1463, 1470
(9th Cir. 1993), *rev'd on other grounds sub nom. Sandin v.
Connor*, 515 U.S. 472 (1995).


F.   SUMMARY ADJUDICATION

The purpose of Rule 56(d) is to salvage some results from
the judicial effort involved in evaluating a summary judgment
motion and to frame narrow triable issues if the court finds that
the order would be helpful with the progress of litigation.
*National Union Fire Ins. Co. v. L.E. Myers Co., Inc.*, 937 F.
Supp. 276, 285 (S.D.N.Y. 1996).  An order under Rule 56(d)

narrows the issues and enables the parties to recognize more full

their rights, yet it permits the court to retain full power to

completely adjudicate all aspects of the case when the proper

time arrives.  *See* 10A C. Wright & A. Miller, *Federal practice

and Procedure* § 2737, at 455-56 (2d ed. 1983).

The procedure under Rule 56(d) is designed to be ancillary

to a summary judgment motion.  Unlike Rule 56(c), which allows

for interlocutory judgment on a question of liability, Rule 56(d)

does not authorize the entry of a judgment on part of a claim or

the granting of partial relief.  *Id.*, § 2737, at 457.

The obligation imposed on the court by Rule 56(d) to specify

the uncontroverted material facts is technically compulsory.  *See*

*Woods v. Mertes*, 9 F.R.D. 318, 320 (D. Del. 1949).  However, if

the court determines that identifying indisputable facts through

partial summary judgment would not materially expedite the

adjudicative process, it may decline to do so.  *See* Wright &

Miller, *supra*, § 2737, at 460.


G.    <u>JUDICIAL ESTOPPEL</u>

Under the doctrines of res judicata and collateral estoppel,

a prior adjudication may have two distinct types of preclusive

effects:  claim preclusion and issue preclusion.[2]  In a federal

---

[2]    The Ninth Circuit and the U.S. Supreme Court have both
noted a preference for the term "claim preclusion" instead of
"merger," "bar," or "res judicata," and for the term "issue
preclusion" instead of "collateral estoppel."  *See Migra v.
Warren City Sch. Dist. Bd. of Educ.* 465 U.S. 75, 77 n.1 (1984);
*Robi v. Five Platters*, 838 F.2d 318, 321 & n.2 (9th Cir. 1988);
*Americana Fabrics v. L & L Textiles* 754 F.2d 1524, 1529 (9th Cir.
1985).

1  cause of action, "Res judicata, or claim preclusion, is defined

2  in *Brown v. Felsen*, 442 U.S. 127 (1979):

3          Res judicata ensures the finality of decisions. Under
        res judicata, 'a final judgment on the merits bars
4          further claims by parties or their privies based on the
        same cause of action.' Res judicata prevents litigation
5          of all grounds for, or defenses to, recovery that were
        previously available to the parties, regardless of
6          whether they were asserted or determined in the prior
        proceeding. Res judicata thus encourages reliance on
7          judicial decisions, bars vexatious litigation, and
        frees the courts to resolve other disputes.

8

9  *McHenry v. Jordan*, 81 F.3d 169, 169 (9th Cir.1996) quoting *Brown*

10 *v. Felsen*, 442 U.S. 127, 131 (1979).  Issue preclusion prevents

11 relitigation of all "issues of fact or law that were actually

12 litigated and necessarily decided" in a prior proceeding.

13 *Villamar v. Hersh*, 2002 WL 1333030, *1 (9th Cir.2002) citing

14 *Segal v. American Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th

15 Cir.1979).  Issue preclusion applies if: (1) the interested

16 parties were afforded a full and fair opportunity to litigate the

17 same issue in a prior action; (2) the issue was actually

18 litigated and decided in a final decision; and (3) the issue was

19 necessary to support the judgment.  *Villamar*, 2002 WL 1333030 at

20 *1 citing *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th

21 Cir.1992); *see also Robi v. Five Platters, Inc.*, 838 F.2d 318,

22 322 (9th Cir.1988).

23      Claim preclusion prevents relitigation of a claim where:  1)

24 the issue relates to the same "primary right" as the prior

25 action;  2)  the prior judgment was final and on the merits;  and

26 3)  the plaintiff was a party or in privity with a party in the

27 prior action.  *Sanchez v. Santa Ana*, 936 F.2d 1027, 1036 (9th

28 Cir. 1990) (applying California law).  All issues that were

25

1 litigated or might have been litigated as part of the cause of

2 action are barred.  *Los Angeles Branch NAACP*, 750 F.2d at 737

3 (9th Cir. 1984) (*citing Olwell v. Hopkins*, 28 Cal.2d 147, 152

4 (1946)).

5      Under the "primary rights" theory, "the right sought to be

6 enforced determines the cause of action."  *Los Angeles Branch*

7 *NAACP*, 750 F.2d at 737.  The invasion of one primary right gives

8 rise to one cause of action for purposes of claim preclusion;

9 the invasion of more than one primary right gives rise to as many

10 causes of action as the number of primary rights violated.  *See,*

11 *e.g., Sawyer v. First City Financial Corp.*, 124 Cal. App. 3d 390,

12 399, 177 Cal. Rptr. 398, 403 (1981).  "California's rule,

13 however, does not mean that different causes of action are

14 involved just because relief may be obtained under either state

15 or federal law, or under either of two legal theories."  *Los*

16 *Angeles Branch NAACP*, 750 F.2d at 737.  As explained by the Ninth

17 Circuit:

18      Two recent California cases illustrate the distinction.
       In *Mattson v. City of Costa Mesa*, 106 Cal. App. 3d 441,
19     447, 164 Cal. Rptr. 913, 917 (1980), the plaintiff had
       previously brought a federal civil rights action
20     alleging assault and wrongful arrest.  He then brought
       an action in state court alleging that the same conduct
21     constituted the common law tort of negligence.  The
       California Court of Appeal held that the second action
22     was barred because both actions sought redress for
       injury to the plaintiff's interest in personal security
23     and integrity.  To be contrasted with *Mattson*, is
       *Agarwal v. Johnson*, 25 Cal.3d 932, 160 Cal. Rptr. 141,
24     155 (1979).  There the plaintiff first brought suit in
       federal court for employment discrimination in
25     violation of Title VII of the Civil Rights Act of 1964,
       42 U.S.C. § 2000e.  He subsequently was permitted to
26     sue his employer in state court for the common law
       torts of defamation and intentional infliction of
27     emotions distress arising out of the same
       discriminatory employment practice.  The California
28     Supreme Court held that the federal action was brought

                                26

to remedy the economic loss in wages, while the state
action was brought to remedy the economic loss to the
different interests in reputation and peace of mind.

*Los Angeles Branch NAACP*, 750 F.2d at 738.  The "cause of action"

distinction is no different where the original judgment is

entered in favor of the defendant;  the plaintiff will be barred

from later suit if the "primary right" test has been met.   7

Witkin, <u>California Procedure</u>, § 249 at 687-88 (1985).


H.   <u>FUTILITY OF AMENDMENT</u>

Even when the plaintiff is *pro se*, the court is not required

to grant leave to amend if the claims are barred as a matter of

law and it would be futile to amend.  *Flowers v. First Hawaiian*

*Bank*, 295 F.3d 960, 976 (9th Cir. 2002) (citing *Cook, Perkins &*

*Lieke, Inc. V. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247

(9th Cir. 1990) (per curiam) (no abuse of discretion to deny

futile amendment)); *see also Lockheed Martin Corp. v. Network*

*Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (where legal

basis for a claim is tenuous, futility supports refusal to grant

leave to amend).


VI.   <u>ANALYSIS</u>

A.   <u>JUDICIAL NOTICE OF GEORGE V. USA FILINGS</u>

Defendants CSAC and PHEAA request judicial notice of (1) an

order of this court dated September 21, 2000, in the matter of

*George  v. The United States Department of Education and Texas*

*Guaranteed Student Loan Corporation*, Case No. F-99-6812 OWW/DLB,

and of (2) "[a]ll papers and pleadings filed with this Court in

reference to [*George  v. USA*, et al.]."  Doc. 23 at 2.

1  Plaintiffs do not object to judicial notice of the September 21,

2  2000 order[3] but do, however, object to judicial notice of "all

3  papers and pleadings filed with the Court" as described in

4  Defendants' request.  Objection to Judicial Notice at 2 (quoting

5  *George v. USA*, 149 F.Supp.2d 1195, 1199 (E.D.Cal.2000)).

6       Defendants contend that, under *U.S. ex rel Robinson*

7  *Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248

8  (9th Cir. 1992), judicial notice of a prior proceeding which is a

9  matter of public record is appropriate and that they are

10  therefore entitled to judicial notice of "all papers and

11  pleadings" filed in any prior proceeding.  *See* Response to

12  Objection to Judicial Notice at 2-3.

13       As discussed in *George*, 149 F.Supp.2d at 1199, while a court

14  may take judicial notice of a judicial proceeding which has a

15  "direct relation to the matters at issue," a court can only take

16  judicial notice of the *existence* of those matters of public

17  record (the existence of a motion or of representations having

18  been made therein) but not of the *veracity* of the arguments and

19  disputed facts contained therein.  *Id.* (quoting *Robinson*, 971

20  F.2d at 248).

21       In *George*, a defendant sought judicial notice of a co-

22  defendants' pleading to treat that pleading as its own.  *Id.*  The

23  defendant's request for judicial notice of the contents and

24  arguments of the motion was rejected because "[a] motion is a

25  legal brief, advancing a partisan position in litigation, not a

26  judicially noticeable fact." *Id.*  *George did not* hold that the

27  _____

28       [3]Published at 149 F.Supp.2d 1195 (E.D.Cal.2000).

28

1   existence and authenticity of a motion filed in a judicial
2   proceeding and a matter of public record could not be judicially
3   noticed.  *Id.*   While the authenticity and existence of a
4   particular order, motion, pleading or judicial proceeding, which
5   are matters of public record, are judicially noticeable, the
6   veracity and validity of its contents (the underlying arguments
7   made by the parties, disputed facts, and conclusions of fact) are
8   not.  *See, e.g., Lee v. City of Los Angeles,* 250 F.3d 668, 690
9   (9th Cir. 2001) (a court may take judicial notice of another
10  court's opinion, but not of the truth of the facts recited
11  therein); *Asdar Group v. Pillsbury, Madison & Sutro,* 99 F.3d 289,
12  290, fn.1 (9th Cir. 1996) (court may take judicial notice of the
13  pleadings and court orders in earlier related proceedings); *Wyatt*
14  *v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003).

15      In *Bryant v. Carleson*, 444 F.2d 353, 357-58 (9th Cir. 1971),
16  the court properly took judicial notice of *the fact* that the
17  defendant had filed an affidavit on November 24, 1970 along with
18  documents said by him to support his argument.  *Id.* at 357.  The
19  court *did not*, however, take judicial notice of the contents of
20  the Defendant's November 24, 1970 affidavit *as being true*.  *Id.*
21  Similarly, the court in *Bryant* took judicial notice of *the fact*
22  that another court had rendered a decision on March 25, 1971, and
23  had established conclusions of law.  *Id.*  The *Bryant* court did
24  not take judicial notice *of the truth* of any disputed facts that
25  were part of the decision.  *Id.*  The *Bryant* court took judicial
26  notice of *the fact* that on April 6, 1971, the plaintiffs had
27  filed a motion to vacate a stay and dismiss an appeal.  The
28  *Bryant* court did not take judicial notice of the *veracity* of any

facts alleged to support the motion - only of the fact that such statements and allegations had been made as a matter of public record. *Id.*

Even where, under the doctrine of *stare decisis*, a court is generally compelled to abide by conclusions of law made in prior proceedings of higher courts, the court *cannot* take judicial notice of the truth of another court's determination of disputed *facts*. *Lee*, 250 F.3d at 690 (citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426-27 (3rd Cir. 1999)).[4] *See also, Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir.2003) (while a court may judicially notice another court's order, it may not accept that court's findings of fact as true). In *Lee, supra,* the Ninth Circuit found that the district court properly took judicial notice of *the fact* that a waiver was signed in a prior proceeding. *Lee*, 250 F.3d at 689-90. However the Ninth Circuit reversed the district court's ruling because the court incorrectly took judicial notice of the *validity of that waiver,* a disputed fact yet unproved. *Id.* at 690.

While the court may take judicial notice of the general meaning of words, phrases, and legal expressions, documents are generally judicially noticeable only for the purpose of

---

[4]Judicial notice is distinguished from res judicata and collateral estoppel whereby a party is prevented from raising a claim or issue which has already been sufficiently addressed and decided in a prior proceeding where that party's interest was adequately represented therein. *See, e.g., Robinson*, 971 F.2d at 249-53; *Allen v. McCurry*, 449 U.S. 90 (1980); *Thorley v. Superior Court,* 78 Cal.App.3d 900, 907 (1978).

1  determining what statements are contained therein, not to prove

2  the truth of the contents.  *See, e.g., Hennessy v. Penril*

3  *Datacomm Networks, Inc.* 69 F.3d 1344, 1354-55 (7th Cir. 1995);

4  *Wilshire Westwood Assocs. V. Atlantic Richfield Corp.*, 881 F.2d

5  801, 803 (9th Cir.1988).

6       "Judicial notice is taken of the existence and authenticity

7  of the public and quasi public documents listed.  To the extent

8  their contents are in dispute, such matters of controversy are

9  not appropriate subjects for judicial notice."  *Del Puerto Water*

10 *Dist. v. U.S. Bureau of Reclamation*, 271 F.Supp.2d 1224, 1234

11 (E.D.Cal.2003).  *See also, California ex rel. RoNo, LLC v. Altus*

12 *Finance S.A.*, 344 F.3d 920, 931 (9th Cir.2003)("requests for

13 judicial notice are GRANTED to the extent that they are

14 compatible with FED. RULE EVID. 201 and do not require the

15 acceptance of facts 'subject to reasonable dispute.'" quoting

16 *Lee*, 250 F.3d at 690); *Kent v. Daimlerchrysler Corp.*, 200

17 F.Supp.2d 1208, 1219 (N.D.Cal.2002); *Weizmann Institute of*

18 *Science v. Neschis*, 229 F.Supp.2d 234, 246-47 (S.D.N.Y.2002);

19 *Happy Inv. Group v. Lakeworld Properties, Inc.*, 396 F.Supp. 175,

20 183 (N.D.Cal.1975); and *Chloe Z Fishing Co. v. Odyssey Re*

21 *(London) Ltd*, 109 F.Supp.2d 1236, 1242-43 (S.D.Cal.2000).

22      Defendants' motion for judicial notice is GRANTED in part

23 and DENIED in part.  Defendants' motion for judicial notice of

24 the authenticity and existence of *George v. U.S.A.*, 149 F.Supp.2d

25 1195 (E.D.Cal.2000), as a prior proceeding, of the order of

26 September 21, 2000, and of the pleadings and filings thereunder

27 as documents which are all matters of public record is GRANTED.

28 To the extent Defendants' seek judicial notice of the veracity of

1   any of the arguments, disputed facts, or conclusions of fact made

2   therein, Defendants' motion for judicial notice is DENIED.

3

4        B.   CLAIM I

5        The parties have stipulated to dismiss Claim I of

6   Plaintiffs' First Amended Complaint with Prejudice.  *See* Doc. 16,

7   Stipulation of Dismissal of Claim I, filed Apr. 3, 2003.

8   Accordingly, issues relating to the viability of claims set forth

9   in Claim I are moot.  Claim I is DISMISSED with prejudice.

10

11       C.   CLAIM II

12       Plaintiffs request to voluntarily strike Claim II is GRANTED

13  WITH PREJUDICE.

14

15       D.   CLAIM III

16       In Claim III of the First Amended Complaint, Plaintiff

17  Fedornock claims that Defendant USA, by and through the Secretary

18  of Education, violated her rights under the 4th Amendment and 5th

19  Amendment of the United States Constitution, 31 U.S.C. §§ 3716

20  and 3720A, and 5 U.S.C. § 504 by failing to provide a full and

21  fair hearing at which she could challenge the validity of the

22  offset of her federal tax refund for payment on a defaulted,

23  federally- guaranteed student loan.  Doc. 14 at 27-28.  Plaintiff

24  FEDORNOCK also challenges the constitutionality of 20 U.S.C. §

25  1082(a) as applied in Claim III.  *Id*.  Plaintiffs have in

26  substance requested that Claim III be dismissed.  *See* Doc. 48 at

27  9.  Plaintiffs request to dismiss Claim III is GRANTED.

28

1      E.   <u>CLAIMS IV - VI</u>

2          In Claim IV of the First Amended Complaint, Plaintiffs

3   Czerny, Stromberg and Comer claim that Defendants USA, PHEAA,

4   ECMC AND CSAC violated their rights: (1) under the 1st Amendment

5   by requiring a sworn statement without provision for any

6   alternative method of assuring veracity (Doc. 14 at 28, 1A) and

7   (2) under the 4th, 5th and 14th  Amendments of the United States

8   Constitution, by providing defective notice and hearing

9   procedures for wage garnishment under 20 U.S.C. § 1095a and

10  applying unreasonable collection costs through application of 34

11  C.F.R. §§ 30.60 and 682.410.  These Plaintiffs claim that

12  Defendants' violated their rights by (A) applying unreasonably

13  disproportionate collection costs to their debts; (B) misleading

14  Plaintiffs to believe that garnishment of their wages could only

15  be stopped by payment in full or by agreement with the guaranty

16  agency; (C) misleading Plaintiffs to believe that an "in-person"

17  or "telephonic" hearing would not allow as detailed review as one

18  that was "in-writing;" (D) denying Plaintiffs the right to demand

19  a hearing by other clear, written means; (E) misleading

20  Plaintiffs to believe that Plaintiffs carried the burden of proof

21  that the debt did not exist or was inaccurate; (F) misleading

22  Plaintiffs to believe they would not be entitled to a hearing if

23  they entered into a repayment agreement with the guaranty agency

24  and subsequently defaulted thereon; (G) imposing an extra burden

25  of defective "Individual Financial Statement;" and (H)

26  misapplying garnished wages to collection costs prior to

27  principal or interest on the loans.  Doc. 14 at 28-29.

28  Plaintiffs also challenge the constitutionality of 20 U.S.C. §

1082(a) as applied in Claim IV.  *Id.*

In Claim V of the First Amended Complaint, Plaintiffs Czerny, Stromberg and Comer claim that Defendants USA, PHEAA, ECMC and CSAC violated their rights under the 4th and 5th Amendments of the United States Constitution, 20 U.S.C. § 1095a, 34 C.F.R. 682.410(b), 18 U.S.C. § 1961, 15 U.S.C. § 1692, 42 U.S.C. §§ 1983, 1985 and 1986, and 5 U.S.C. § 504 by: (1) directing use of the formula in 34 C.F.R. 30.60 to improperly determine collection costs; (2) charging 24.48% for collection costs only because "that is what the Secretary charges;" (3) denying discovery or challenges to the validity of a debt and/or collection costs; (4) failing to prohibit ECMC's illegal use of rules or to take other corrective action; (5) publishing illegal costs and charges under 34 C.F.R. § 30.60; (6) coercing hearing officers to enforce illegal rules and unreasonable collection costs by threatening termination; (7) applying payments first to collection costs, then interest and then principal; and (8) conspiring to violate defaulting borrowers' rights.  In Claim V Plaintiffs allege that Defendants failed to comply with the requirements of 5 U.S.C. § 504, *et seq.*, and challenge the constitutionality of 20 U.S.C. § 1082(a) as applied.  *Id.*

In Claim VI of the First Amended Complaint, Plaintiffs Czerny, Stromberg and Comer claim that Defendants USA, PHEAA, ECMC AND CSAC violated their rights under the 4th and 5th Amendment of the United States Constitution, 20 U.S.C. §§ 1095a(a)(5), 1078(c)(2)(D)(ii) and the Student Loan Contract by: (1) improperly allocating their payments; (2) assessing unreasonable collection costs; and (3) denying Plaintiffs' their

34

1 | right to challenge the assessment of collection costs.  Doc. 14
2 | at 36-37.  Plaintiffs in Claim VI allege that Defendants failed
3 | to comply with the requirements of 5 U.S.C. § 504, et seq., and
4 | challenge the constitutionality of 20 U.S.C. § 1082(a) as
5 | applied.  *Id.*

7 | **1.   Plaintiffs Claims under the First Amendment**

8 | Plaintiffs claim that Defendants abridged their right to
9 | free exercise of religion as protected by the First Amendment of
10 | the United States Constitution by requiring them to sign a
11 | "Request for Hearing Form" which states "I swear, under penalty
12 | of perjury," in order to receive an administrative hearing on the
13 | validity of wage garnishment and collection costs for defaulted
14 | federally-guaranteed student loans.  *See* Doc. 14 at 28.
15 | Plaintiffs contend that Defendants' failure to provide any
16 | alternative method of assuring the veracity of an official
17 | document, such as the words "affirm," "certify," or "declare" is
18 | unconstitutional.  *Id.*

> The right to free exercise of religion, guaranteed by
> the First Amendment to the Constitution, is one of our
> most protected constitutional rights.  The Supreme
> Court has stated that 'only those interests of the
> highest order and those not otherwise served can
> overbalance legitimate claims to the free exercise of
> religion.'

23 | *Ferguson v. Commission of Internal Revenue,* 921 F.2d 588, 589
24 | (5th Cir. 1991) quoting *Wisconsin v. Yoder,* 406 U.S. 205, 215
25 | (1972).

26 | In *Gordon v. State of Idaho,* 778 F.2d 1397, 1400 (9th Cir.
27 | 1985), the Ninth Circuit reversed the district court's dismissal
28 | of a party's claim that he had wrongfully been required to

1  "affirm" an oath to tell the truth under pains and penalties of

2  perjury.  *Gordon* held that requiring the plaintiff to "affirm" an

3  oath to tell the truth at his deposition offended the plaintiff's

4  firmly held religious beliefs and violated his rights to free

5  exercise of religion under the First Amendment.  *Id.* 1400-01.

6  The dissent disagreed:

7          Appellant seeks to assert claimed rights in the federal
           courts.  He should not be permitted to disregard
8          reasonable Federal Rules of Procedure because of his
           insistence, however sincere, that his esoteric
9          interpretation of one of those rules must prevail over
           the interpretation established by the federal
10         courts.[][5] Appellant's demand trivializes the vital
           purposes of the free exercise clause.  Moreover,
11         yielding to appellant's demand in this case tends to
           invite demands for special formulations in future cases
12         and thus cause needless delay in the administration of
           justice.
13

14  *Gordon*, 778 F.2d at 1401-02.

15          In *Moore v. United States,* 348 U.S. 966 (1955), the Supreme

16  Court held that a witness could not be prevented from testifying

17  merely because he refused to use the word "solemnly" in affirming

18  to tell the truth.  *Id.*  The court found that their was no

19  _____

20          [5] Footnote 2 of the dissent notes the insufficiency of

21  alternative methods of insuring veracity of a witness's

    statement:
22

23          Neither of the statements approved by the majority
            satisfies an important purpose of requiring oath or
24          affirmation, i.e., to insure that the witness makes a
            conscious commitment to tell the truth.  To say that 'I
25          understand that I must tell the truth' or that 'I
            understand I must accurately state the facts' is not a
26          promise to tell the truth nor accurately to state the
            facts.
27

28  778 F.2d at 1401, fn 2.

requirement that the word "solemnly" had to be used in the affirmation. *Id.* *Wooley v. Maynard*, 430 U.S. 705 (1977) invalidated as unconstitutional compelled display of a license plate slogan that offended individual religious beliefs where the slogan was not necessary to achieve the governmental purpose of displaying license information on vehicles registered within that state. *West Virginia Bd. of Ed. V. Barnette*, 319 U.S. 624 (1943) held commanding religious objectors to partake in a compulsory flag salute unconstitutional. *But Cf. Gillette v. United States*, 401 U.S. 437, 461 (1971)("[o]ur cases do not at their farthest reach support the proposition that a stance of conscientious opposition relieves an objector from any colliding duty fixed by a democratic government.")  *Id.* at 461.

O. *Cole v. Richardson,* 405 U.S. 676,(1972) held that requiring individuals, as a condition of employment, to swear to uphold and defend the United States Constitution did not offend the First Amendment's protection of the free exercise of religion.  *Id.* at 686-87.  In *United States v. Ward*, 989 F.2d 1015 (9th Cir. 1993), a criminal defendant professed that, despite his innocence, he would risk conviction and incarceration rather than testify under the court's "truth" oath.  *Id.* at 1018. Ward complained that his religious beliefs required a "higher standard of truth" than the court's "truth" oath required.  *Id.* Because Ward agreed to take both the court's "truth" oath, in conjunction with his own, "fully integrated honesty" oath, the court held that he could not be prevented from testifying in his own defense despite the "peculiarity or uniqueness of Ward's creed..."  *Id.* at 1018, fn. 1 and 1020.  The *Ward* court was

careful to distinguish the issue presented from cases "where the
witness offers to swear only to a cleverly worded oath that
creates loopholes for falsehood or attempts to create a safe
harbor for perjury."  *Id.* at 1020 (quoting *United States v.
Fowler*, 605 F.2d 181, 185 (5th Cir.1979)(court properly refused
testimony where defendant was only willing to say that he was "a
truthful man" or "would not tell a lie to stay out of jail.")

On November 19, 2003, the United States Supreme Court
granted certiorari in *Elk Grove Unified School District v.
Newdow,* 2003 WL 22766734 (U.S., November 19, 2003), on the issue
of "[w]hether a public school district policy that requires
teachers to lead willing students in reciting the Pledge of
Allegiance, which includes the words 'under god,' violates the
Establishment Clause of the First Amendment, as applicable
through the Fourteenth Amendment."  *Id.*  Consideration of the
underlying Ninth Circuit's holding, that allowing willing
students to recite the pledge of allegiance in public schools
violates the Establishment Clause, is still pending before The
Supreme Court.[6]  *Id.*

The government has the right to require debtors who seek and
obtain for their own benefit, public money to commit under the
pains and penalties of perjury that the information provided
therefor is true and correct.  This is necessary to assure the

_____

⁶   The three judge-judge panel of the U.S. Court of Appeals
for the Ninth Circuit also struck down as unconstitutional the
Pledge itself, invalidating the 1954 act of Congress which added
the words "under God" to the Pledge.  That portion of the Ninth
Circuit's holding was withdrawn by an amended opinion issued
February 28, 2003.

1   integrity of the United States education loan program.  Terms

2   such as "swear" or "affirm" in the context of truth-telling do

3   not violate the Establishment Clause of the 1st Amendment.  The

4   word "swear" used to ensure truthfulness and veracity of

5   statements, whether contained in a document or made in open

6   court, is not commonly understood to endorse or prefer any

7   religion or to implicate in any way the lawful practice or non-

8   practice of religion.  The government has the right to require an

9   undertaking of truthfulness from persons who seek government

10  benefits.  Religion is not implicated.

11      Unless the use of a word or term is widely recognized as

12  implicating religion; in cases too numerous to count, one's

13  freedom to exercise religion is not unlimited.  *See, e.g.,*

14  *Employment Div., Dept. Of Human Resources of Oregon v. Smith*, 494

15  U.S. 872, 879 (1990)(the Free Exercise Clause "does not relieve

16  an individual of the obligation to comply with a 'valid and

17  neutral law of general applicability on the ground that the law

18  proscribes (or prescribes) conduct that his religion prescribes

19  (or proscribes).'" quoting *United States v. Lee*, 455 U.S. 252,

20  263, n.3 (1982)); *Minersville School Dist. Bd. of Ed. v. Gobitis*,

21  310 U.s. 586, 594-95 (1940)("Conscientious scruples have not, in

22  the course of the long struggle for religious toleration,

23  relieved the individual from obedience to a general law not aimed

24  at the promotion or restriction of religious beliefs"); *Reynolds*

25  *v. United States*, 98 U.S. 145, 166-67 (1879)(rejecting claim that

26  laws against polygamy violated 1st Amendment for those whose

27  religion commanded the practice).  The Constitution protects a

28  person's right to free exercise of religion so long as that

1  practice comports with the law.  *Id*.  To provide otherwise would

2  be to "make the professed doctrines of religious belief superior

3  to the law of the land, and in effect to permit every citizen to

4  become a law unto himself."  *Reynolds*, 98 U.S. at 167.

5       Here, the law requires truth-telling in applications for and

6  administration of the student loan program.  Even if, *arguendo*,

7  this lawful requirement conflicts with the exercise of religion,

8  the limitation is constitutionally permissible.

9

10       2.   <u>Due Process and the Adequacy of Notice and Hearing</u>
              <u>Procedures for Collection Cost Assessment and Wage</u>
11            <u>Garnishment under the HEA (5th and 14th Amendments</u>
              <u>- As Applied Challenges)</u>
12

13       The Due Process Clause of the United States Constitution

14  provides that "[n]o person shall...be deprived of life, liberty,

15  or property, without due process of law..."  U.S.Const. Amend. 5.

16  "[A]t a minimum [the Due Process Clause] require[s] that

17  deprivation of life, liberty or property by adjudication be

18  preceded by notice and opportunity for hearing appropriate to the

19  nature of the case."  *Mullane v. Central Hanover Bank & Trust*

20  *Co.*, 339 U.S. 306, 313 (1950).  Plaintiffs claim denial of due

21  process by the Defendants' application[7] of wage garnishment and

22  unreasonable collections costs pursuant to 20 U.S.C. § 1095a, 34

23  C.F.R. §§ 30.60, and 682.410(b).

24  _____

25       [7] Plaintiffs concede that the statutes and regulations, as
    written, satisfy minimum due process requirements.  Doc. 48 at 4.
26  Plaintiffs argue only that the Defendants' *application* of the
    statutes and regulations (actions taken under the authority of
27  the statutes and regulations at issue) denied their rights under
    the 5th and 14th Amendments.  *Id*.
28

                                  40

1    A claim for a due process violation under the 5th and 14th

2  Amendments of the United States Constitution requires: (1) state

3  action; (2) which deprived them of a federal right or interest;

4  and (3) this deprivation did not include sufficient notice and an

5  opportunity to be heard.  *See, e.g., Lugar v. Edmondson Oil Co.*,

6  457 U.S. 922, 936 (1982); *American Mfrs. Mutual Ins. Co. v.*

7  *Sullivan*, 526 U.S. 40, 50 (1999); *Cleveland Bd. Of Educ. v.*

8  *Loudermill*, 470 U.S. 532 (1985).

9       [S]tate action requires both an alleged constitutional
        deprivation 'caused by the exercise of some right or
10      privilege created by the State or by a rule of conduct
        imposed by the State or by a person for whom the State
11      is responsible,' and that 'the party charged with the
        deprivation must be a person who may fairly be said to
12      be a state actor.'

13  *Sullivan*, 526 U.S. at 50 (internal citations omitted).  Here, the

14  state action alleges is the Defendants' practice of affording

15  insufficient notice and hearing procedures with regard to

16  legally-enforceable *orders* of wage garnishment and allocation of

17  collection costs for defaulted federally-guaranteed student

18  loans.  *See* Doc. 14 at 3:13-14, 4:24-25, and 10-12.

19      *George G. v. USA, et al.*, 149 F.Supp.2d 1195 (E.D. Cal.

20  2000) found that a private guarantor's allocation of collection

21  costs for recovery of defaulted federally-guaranteed student

22  loans, subject to standards of reasonableness as set forth by

23  regulation guidelines,[8] was not "state action" violating the

24  _____

25      [8]  34 C.F.R. § 682.405(b)(1)(iv) places a cap, 18.5% of
    unpaid principal and accrued interest, on what private guarantee
26  agencies can assess as "reasonable" collection costs associated
    with loan rehabilitation for federally-guaranteed student loans.
27  "[T]he collection costs may not exceed 18.5 percent of the unpaid
    principal and accrued interest at the time of the sale."  *Id.*
28

debtor's due process rights.  *Id.* at 1210.  This case is different from *George, supra*, i.e., whether an HEA-approved hearing officer's *order* to garnish a debtor's wages or to intercept a debtor's tax refund or federal benefits,[9] in accordance with HEA regulations, constitutes state action. *George G.* is not controlling.

In order to state a claim for a due process violation under the Fifth Amendment, a plaintiff must allege that state action deprived him of a federal right or interest without constitutionally sufficient notice and an opportunity to be heard.  *George*, 149 F.Supp.2d at 1203 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *American Mfrs. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); and *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532 (1985)).

"[T]he first step in the state actor analysis is to isolate the specific conduct of which Plaintiff complains."  *Id.* at 1206 (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).  In *George*, the complained-of conduct was *charging* collection costs and the *threat* of seeking an order to intercept the Plaintiff's tax refund or wage garnishment.  *Id.* at 1206-07.  *George* determined

---

[9] Under the Treasury Offset Program ("TOP"), the United States Department of Treasury helps federal agencies collect delinquent debts owed to the government.  *See* 31 U.S.C. 3716, et seq.  Under the TOP, once a federal debtor is given notice and an opportunity to be heard as to the validity and amount of any federal debt, the collecting agency may certify to the Department of Treasury that the debt is eligible for offset, 31 U.S.C. 3716(a), 3720A(b), and that the appropriate notice has been given.  Thereafter the Department of Treasury will offset any federal refunds or benefits by the amount of certified debt.  *See* 34 C.F.R. 30.22.

1    that neither the act of *charging* collection costs in connection

2    with defaulted student loans, or *threatening* to seek an

3    administrative order of wage or tax refund garnishment qualified

4    as "state action" to which due process safeguards attached.   *Id.*

5        Here, Plaintiffs challenge as "state action" the process by

6    which a legally-enforceable administrative order is entered,

7    which permits Defendants to intercept the Plaintiffs' wages  and

8    validates an administrative order, the allocation of collection

9    costs previously charged.

10       Congress, in creating Section 488A of the HEA, granted

11   private third parties the power to adjudicate citizens' property

12   interests in wages (wage garnishment) and liability for

13   collection costs in connection with federally-guaranteed

14   defaulted student loans:

15           the individual [student loan debtor] shall be provided
             an opportunity for a hearing in accordance with
16           subsection (b) of this section on the determination of
             the Secretary or the guaranty agency, as appropriate,
17           concerning the existence or the amount of the debt,
             and, in the case of an individual whose repayment
18           schedule is established other than by a written
             agreement pursuant to paragraph (4), concerning the
19           terms of the repayment schedule...

20   20 U.S.C. 1095a(1)(5).

21       Subsection (b) of Section 488a of the HEA (20 U.S.C. 1095a),

22   provides the procedural requirements for hearings at which an

23   order determining the amount due and owing and providing for wage

24   garnishment for repayment on a defaulted student loan:

25           A hearing described in subsection (a)(5) of this
             section shall be provided prior to issuance of a
26           garnishment order if the individual, on or before the
             15th day following the mailing of the notice described
27           in subsection (a)(2) of this section, and in accordance
             with such procedures as the Secretary or the head of
28           the guaranty agency, as appropriate, may prescribe,

43

1   files a petition requesting such a hearing. If the
    individual does not file a petition requesting a
2   hearing prior to such date, the Secretary or the
    guaranty agency, as appropriate, shall provide the
3   individual a hearing under subsection (a)(5) of this
    section upon request, but such hearing need not be
4   provided prior to issuance of a garnishment order. A
    hearing under subsection (a)(5) of this section may not
5   be conducted by an individual under the supervision or
    control of the head of the guaranty agency, except that
6   nothing in this sentence shall be construed to prohibit
    the appointment of an administrative law judge. The
7   hearing official shall issue a final decision at the
    earliest practicable date, but not later than 60 days
8   after the filing of the petition requesting the
    hearing.
9

10  20 U.S.C. 1095a(b).

11      The issue raised here stems from allegations that the

12  private hearing officers, rendering legally enforceable

13  withholding orders and adjudicating the validity of the debt and

14  amount thereof (including any collection costs applied), do not

15  comply with the procedural safeguards built into the statute,

16  violates Plaintiffs' due process rights.   The Plaintiffs allege

17  judicial review is the proper mechanism to ensure hearing

18  officers' compliance with the statutes' procedural safeguards.

19  To the extent a hearing officer's order, which determines the

20  amount of debt due and owing, including the amount of collection

21  costs, and is a legally-enforceable order under which wages may

22  be garnished, is deemed "state action," judicial review of such

23  order is appropriate under the due process clause of the United

24  States Constitution.

25      The federal Administrative Procedure Act, 5 U.S.C. §§ 702 et

26  seq., entitles a person suffering legal wrong because of agency

27  action or aggrieved by agency action, the right to judicial

28  review.   Here, a statutory scheme has been created for the

44

1   hearing, decision, and enforcement of student loans.

2       The statutory scheme is different from judicial enforcement

3   of arbitration awards.  Such awards are the product of contract,

4   an agreement by the parties to be bound by the order of a third

5   party arbitrator, who does not act for the government and instead

6   entails non-judicial dispute resolution outside the court system.

7   *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49-50 (1974).

8   Here, a student loan debtor has not agreed to be legally bound by

9   a private alternate dispute resolution to determine property

10  rights.

11      Article I, section 8 grants Congress the power "To

12  constitute Tribunals inferior to the supreme Court" and "To make

13  all Laws which shall be necessary and proper for carrying into

14  Execution the foregoing Powers, and all other Powers vested by

15  this Constitution in the Government of the United States, or in

16  any Department or Officer thereof."  U.S.Const. Art. I, section

17  8.  Article III of the Constitution provides for the creation of

18  the judicial branch of government: "The judicial Power of the

19  United States, shall be vested in one supreme Court, and in such

20  inferior Courts as the Congress may from time to time ordain and

21  establish."  U.S.Const. Art. III, Section 1.  Section 2 of

22  Article III of the United States Constitution provides the

23  general jurisdiction of the judicial branch of government: "The

24  judicial Power shall extend to all Cases, in Law and Equity,

25  arising under this Constitution, the Laws of the United States,

26  and Treaties made, or which shall be made, under their

27  Authority..."  U.S.Const. Art. III, Section 2.

28      The act of adjudication, which results in an "order" is

45

1  legally enforceable "state action" for purposes of due process,

2  particularly where such "order" dictates the property rights and

3  interests of citizens of the United States. *See, e.g., Thomas v.*

4  *Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 594 (1985); *North*

5  *Pipeline Const. v. Marathon Pipe Line Co.*, 458 U.S. 50, 70 fn.

6  23, (1982)("Congress cannot 'withdraw from [Art. III] judicial

7  cognizance *any* matter which, *from its nature*, is the subject of a

8  suit at the common law, or in equity, or admiralty.'" quoting

9  *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272,

10  284 (1856)); *Atlas Roofing Co. v. Occupational Safety and Health*

11  *Review Comm'n*, 430 U.S. 442, 455 fn.13 (1977).

12  Where more than one interpretation is possible, an act of

13  Congress will not be interpreted to be unconstitutional. *See*

14  *e.g., I.N.S. v. St. Cyr*, 533 U.S. 289, 299-300 (2001); *Brown v.*

15  *E.P.A.*, 521 F.2d 827, 842 (9th Cir.1975)(*vacated on other grounds*

16  *by* 431 U.S. 99 (1977)). Congress has not evinced its intent that

17  the HEA remove student loans from the area of judicial review.

18  Plaintiffs sufficiently allege state action to state a claim

19  under the Due Process Clause.

20  In *Logan v. Zimmerman Brush Company*, 455 U.S. 422 (1982),

21  the Supreme Court identified a two-part inquiry to determine

22  whether an individual has been accorded due process as required

23  by the Constitution. *Id.* at 428. First, the court must

24  determine whether the complaining party was "deprived of a

25  protected interest," i.e., life, liberty or property. *Id.* If

26  the first question is answered in the affirmative, the court must

27  determine what process was due under the circumstances. *Id.*

28  Here, Plaintiffs allege that they were deprived of a

1  percentage of their wages and subjected to unreasonable
2  collection costs without due process of law.   The first issue
3  under *Logan, supra*, is whether Plaintiffs' alleged entitlement
4  not to have an "unlawful" percentage of their wages garnished, or
5  to be subjected to collection costs without regard to actual
6  costs incurred, are property interests protected under the Due
7  Process Clause.   "The hallmark of property [protected by due
8  process] is an individual entitlement grounded in state law,
9  which cannot be removed except 'for cause.'" *Logan*, 455 U.S. at
10 430 citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1,
11 11-12 (1978); *Goss v. Lopez*, 419 U.S. 565, 573-74 (1975); and
12 *Board of Regents v. Roth*, 408 U.S. 564, 576-78 (1972).   Wages are
13 considered property interests which require due process prior to
14 being garnished.   *See Sniadach v. Family Finance Corp. Of Bay*
15 *View*, 395 U.S. 337, 341-42 (1969).   *Mathews v. Eldridge*, 424 U.S.
16 319 (1976) deemed social security disability benefits property
17 interests entitled to due process protections.   *Goldberg v.*
18 *Kelly*, 397 U.S. 254 (1970) recognized that individuals maintain
19 protected interest in welfare benefits.   In *Sorenson v. Secretary*
20 *of the Treasury*, 557 F.Supp. 729, 737 affirmed 752 F.2d 1433 (9th
21 Cir..1985) tax refunds were recognized as property interests
22 protected by due process.   *See also, Barry v. Barchi*, 443 U.S. 55
23 (1979) (recognizing horse trainer's license as property interest
24 protected by due process); *Memphis Light, Gas & Water, supra*,
25 (individual had protected property interest in receiving utility
26 service); *Goss, supra*, (deemed a high school education a
27 property interest entitled to protections of due process).
28      Because Plaintiffs' claims arise from the alleged

1   deprivation of recognized property interests protected by the Due
2   Process Clause, the inquiry turns to what process was due
3   Plaintiffs under the particular circumstances.  *Logan* at 428.
4   Stated another way, the court must determine what procedures were
5   constitutionally required prior to or after Plaintiffs' wages
6   were garnished and collection costs added to the debt.  *Id.*   In
7   *Sniadach*, the Supreme Court recognized that due process requires
8   some kind of notice and hearing to take place *before* wages could
9   be garnished.  The Wisconsin law in *Sniadach*, 395 U.S. at 338-39,
10  improperly allowed plaintiffs in garnishment actions to freeze
11  wages pending a final determination by the court without adequate
12  notice and hearing.  *Id.*

13       In *Lujan v. G & G Fire Sprinklers*, Inc. 532 U.S. 189 (2001),
14  the Supreme Court found that plaintiff's ability to bring a post-
15  garnishment breach of contract cause of action in state court was
16  sufficient due process; no hearing was required under due process
17  prior to withholding payment.  *Id.*   In *Lujan*, a subcontractor
18  challenged the constitutional validity of withholding procedures
19  of a state law, which enabled the State to withhold payments due
20  public works contractors for noncompliance with Code
21  requirements.  *Id.* at 191.  When the State Division of Labor
22  Standards ("SDLS") determined that a contractor had violated the
23  Code, it would issue notices directing the withholding of that
24  contractor's payment.  *Id.* at 192.  The plaintiffs in *Lujan*
25  claimed that the issuance of withholding notices without a
26  hearing deprived them of property without due process in
27  violation of the Fourteenth Amendment.  *Id.* at 293.
28       The Supreme Court in *Lujan* held that, because the state law

1   afforded a post-deprivation remedy which affords sufficient

2   opportunity to effectively challenge the withholding of payments

3   in state court in an action for breach of contract, plaintiffs

4   were not denied due process even though payments due could be

5   withheld until the conclusion of a lawsuit. *Id.* at 195 (citing

6   *Logan*, 455 U.S. 422, 433 (1982)). *Lujan* distinguished *Sniadach*,

7   *supra*, by categorizing the *Sniadach* plaintiff's interest in wages

8   as a "present entitlement." *Id.* at 196. In *Lujan*, plaintiff's

9   claim that it was entitled to payment for subcontracting work

10  performed on a public works project was distinguished as "an

11  interest, unlike the interests discussed [in *Sniadach*, wages],

12  that can be fully protected by an ordinary breach-of-contract

13  suit." *Id.* at 196.

14      *Sniadach* and *Lujan* draw a fine distinction between property

15  interests in standard wages, to which individuals have a "present

16  entitlement," and property interests in payment to be made under

17  a contract, to which individuals' rights are deemed "fully

18  protected by an ordinary breach-of-contract suit." *Id.* at 196.

19  The property interest involved here, wages garnished is the same

20  interest as in *Sniadich*, to which "present entitlement" is due.[10]

21  *Id.* *Sniadach* suggests Plaintiffs were entitled to some form of

22  notice and opportunity to be heard prior to their wages being

23

24      [10] This is a fine distinction, as employment law is premised

25  on considered contract law. *See, e.g., Appling v. State Farm*
    *Mut. Auto Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003); *Pacificare*

26  *Health Systems, Inc. v. Book*, 538 U.S. 401, 402 (2003). When
    employees have grievances with their employers, whether for

27  unpaid wages, poor working conditions, etc., the appropriate

28  legal course is a claim for breach of contract. *Id.*

1  garnished.  *Sniadach*,   395 U.S. at 341-42.

2      Plaintiffs here do not dispute that they were given some

3  notice and some opportunity for a hearing or that procedural

4  safeguards are set forth under the statute.  *See* Doc. 14.

5  Rather, Plaintiffs challenge the constitutionality of the statute

6  *as applied*, alleging that the notice and hearing procedures

7  provided them were inadequate in that, prior to rendering

8  legally-enforceable orders of wage garnishment, collection costs,

9  and declarations of amounts owed, Defendants failed to provide

10  Plaintiffs with a meaningful opportunity to be heard.  *See, e.g.*,

11  *Bell v. Burson*, 402 U.S. 535, 541-42 (1971)("hearing required by

12  the Due Process Clause must be meaningful and appropriate to the

13  nature of the case"); *Jordon v. City of Lake Oswego*, 734 F.2d

14  1374, 1376 (9th Cir.1984); *In re City Equities of Anaheim, Ltd*,

15  22 F.3d 954, 959 (9th Cir.1994); *Yang v. Shalala*, 22 F.3d 213,

16  217 (9th Cir.1994).  Such assertions must be accepted as true for

17  this motion.

18

19          3.   <u>Constitutionality of 20 U.S.C. § 1095a, 34 C.F.R.</u>
              <u>§ 30.60 and 34 C.F.R. § 682.410 as written</u>:
20

21      "Judging the constitutionality of an Act of Congress is

22  properly considered 'the gravest and most delicate duty that this

23  Court is called upon to perform.'" *Walters v. National*

24  *Association of Radiation Survivors*, 473 U.S. 305, 319 (1985)

25  quoting *Rostker v. Goldberg*, 453 U.S. 57, 64 (1981) (quoting

26  *Blodgett v. Holden*, 275 U.S. 142, 148 (1927).  Even when a

27  federal statute is claimed to deny due process guarantees,

28  significant "deference to congressional judgment must be

50

afforded."  *Id.* at 319-20 (citing *Schweiker v. McClure*, 456 U.S.
188 (1982); *Mathews v. Eldridge*, 424 U.S. at 349).  "'Due
process' is a flexible concept [and] the processes required by
the Clause with respect to the termination of a protected
interest will vary depending upon the importance attached to the
interest and the particular circumstances under which the
deprivation may occur."  *Id.* at 320 (citing *Mathews, supra,* 424
U.S. at 334; *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

    Section 1095a mandates notice and the opportunity for a
hearing prior to the garnishment of disposable pay to enforce
repayment on a student loan.  20 U.S.C. § 1095a(a).
Specifically, 20 U.S.C. § 1095a(a) authorizes guaranty agencies
or the Secretary, for loans guaranteed under FFELP (20 U.S.C. §
1071, et seq.) to:

> garnish the disposable pay of an individual to collect
> the amount owed by the individual, if he or she is not
> currently making required repayment under a repayment
> agreement with the Secretary....provided that[:]
>
> (1) the amount deducted for any pay period may not
> exceed 10 percent of disposable pay, except that a
> greater percentage may be deducted with the written
> consent of the individual involved;
>
> *(2) the individual shall be provided written notice,*
> *sent by mail to the individual's last known address, a*
> *minimum of 30 days prior to the initiation of*
> *proceedings, from the guaranty agency or the Secretary,*
> *as appropriate, informing such individual of the nature*
> *and amount of the loan obligation to be collected, the*
> *intention of the guaranty agency or the Secretary, as*
> *appropriate, to initiate proceedings to collect the*
> *debt through deductions from pay, and an explanation of*
> *the rights of the individual under this section;*
>
> (3) the individual shall be provided an opportunity to
> inspect and copy records relating to the debt;
>
> (4) the individual shall be provided an opportunity to
> enter into a written agreement with the guaranty agency
> or his designee, as appropriate, to establish a

schedule for the repayment of the debt;

*(5) the individual shall be provided an opportunity for a hearing in accordance with subsection (b) of this section on the determination of the Secretary or the guaranty agency, as appropriate, concerning the existence of the amount of the debt, and, in the case of an individual whose repayment schedule is established other than by a written agreement pursuant to paragraph (4), concerning the terms of the repayment schedule;*

(6) the employer shall pay to the Secretary or the guaranty agency as directed in the withholding order issued in this action, and shall be liable for, and the Secretary or the guaranty agency, as appropriate, may sue the employer in a State or Federal court of competent jurisdiction to recover, any amount that such employer fails to withhold from wages due an employee following receipt of such employer of notice of the withholding order, plus attorneys' fees, costs, and, in the court's discretion, punitive damages, but such employer shall not be required to vary the normal pay and disbursement cycles in order to comply with this paragraph;

(7) if an individual has been reemployed within 12 months after having been involuntarily separated from employment, no amount may be deducted from the disposable pay of such individual until such individual has been reemployed continuously for at least 12 months; and

(8) an employer may not discharge from employment, refuse to employ, or take disciplinary action against an individual subject to wage withholding in accordance with this section by reason of the fact that the individual's wages have been subject to garnishment under this section, and such individual may sue in a State or Federal court of competent jurisdiction any employer who takes such action.  The court shall award attorneys' fees to a prevailing employee and, in its discretion, may order reinstatement of the individual, award punitive damages and back pay to the employee, or order such other remedy as may be reasonably necessary.

*(b) Hearing requirements*

*A hearing described in subsection (a)(5) of this section shall be provided prior to issuance of a garnishment order if the individual, on or before the 15ᵗʰ day following the mailing of the notice described in subsection (a)(2) of this section, and in accordance with such procedures as the Secretary or the head of the guaranty agency, as appropriate, may prescribe,*

52

*files a petition requesting such a hearing.*  If the
individual does not file a petition requesting a
hearing prior to such date, the Secretary or the
guaranty agency, as appropriate, shall provide the
individual a hearing under subsection (a)(5) of this
section upon request, but such hearing need not be
provided prior to issuance of a garnishment order.  A
hearing under subsection (a)(5) of this section may not
be conducted by an individual under the supervision or
control of the head of the guaranty agency, except that
nothing in this sentence shall be construed to prohibit
the appointment of an administrative law judge.  The
hearing official shall issue a final decision at the
earliest practicable date, but not later than 60 days
after the filing of the petition requesting the
hearing.

(c)  Notice requirements

The notice to the employer of the withholding order
shall contain only such information as may be necessary
for the employer to comply with the withholding order.

20 U.S.C. § 1095a(a)-(c)(emphasis added).

The applicable provisions of the Department of Education

regulations which Plaintiffs claim Defendants' applied to effect

an unreasonable seizure (4th Amendment) and violate their rights

to due process (5th and 14th Amendments) state:

Whether or not provided for in the borrower's
promissory note and subject to any limitation on the
amount of those costs in that note, the guaranty agency
shall charge a borrower an amount equal to reasonable
costs incurred by the agency in collecting the
loan...[including] attorneys' fees, collection agency
charges, and court costs.  Except as provided in §§
682.401(b)(27)....the amount charged a borrower must
equal the lesser of (i)...the formula in 34 C.F.R. §
30.60; or (ii) the amount the borrower would be charged
... if the loan was held by the U.S. Department of
Education.

34 C.F.R. § 682.410(b)(2).

The 34 C.F.R. § 682.401(b)(27) exception reads:

(27) Collection charges and late fees on defaulted FFEL
loans being consolidated.

1    (i) A guaranty agency may add collection costs in an
     amount not to exceed 18.5 percent of the outstanding
2    principal and interest to a defaulted FFEL Program loan
     that is included in a Federal Consolidation loan.
3
     (ii) When returning the proceeds from the consolidation
4    of a defaulted loan to the Secretary, a guaranty agency
     may only retain the amount added to the borrower's
5    balance pursuant to paragraph (b)(27)(i) of this
     section.
6

7    *Id.*

8         The formula set forth in 34 C.F.R. § 30.60 enables the

9    Secretary to recover, from a defaulting student loan debtor,

10   collection costs based on an equation which factors in the amount

11   of the debt and (1) the commission rate paid to any collection

12   agency (34 C.F.R. § 30.60(c)), or, in cases where more than one

13   collection agency is used, (2) "a weighted average of the

14   commission rates charged by all collection agencies collecting

15   similar debts, computed for each fiscal year."[11]

16        Whether 20 U.S.C. § 1095a, 34 C.F.R. §§ 30.60 and 682.410,

17   as applied, violate Plaintiffs' rights to due process, depends on

18   what minimum process individuals are due when their property

19   interest in 10% of their wages and reasonable collection costs

20   are subject to involuntary reduction for repayment of student

21

22

23        [11]34 C.F.R. § 30.60(d) creates a separate equation for
     determining the "weighted average" of commission rates which
24   factors in: (1) the dollar amount of similar debts placed in an
     individual collection agency from the preceding year; (2) the
25   commission rate paid to that agency for the collection of similar
     debts; (3) the dollar amount of similar debts placed in all
26   collection agencies the preceding year; and (4) the number of
     collection agencies in which similar debts were placed the year
27   prior. *Id.*
28

                                    54

loans.[12]  *See, e.g., Mackey v. Montrym*, 443 U.S. 1, 13 (1979);
*Mathews*, 424 U.S. at 348; *Walters*, 473 U.S. at 320-21.

> In defining the process necessary to ensure
> 'fundamental fairness' we have recognized that the
> Clause does not require that 'the procedures used to
> guard against an erroneous deprivation... be so
> comprehensive as to preclude any possibility of error,'
> *Mackey v. Montrym*, 443 U.S. 1, 13...(1979), and in
> addition we have emphasized that the marginal gains
> from affording an additional procedural safeguard often
> may be outweighed by the societal cost of providing
> such a safeguard.

*Walters*, 473 U.S. at 320-21 (citing *Mathews*, 424 U.S. at 348).

The Supreme Court in *Mathews, supra*, used a three-part
balancing test to determine what process is due under any
variable set of facts.  *Id.* at 344.  The Mathews test requires
consideration and balancing of: (1) the private interest that
will be affected by official action (deprivation of 10% of
Plaintiffs' wages, social security benefits, and/or tax refunds);
(2) the risk of erroneous deprivation of such interest through
the procedures used (improper or unfair allocation of
garnished/offset funds); (3) the probable value of additional or
substitute procedural safeguards and the government's interest in
adhering to the existing system (availability of alternative
methods of achieving the government's interest at stake).  *See*
*Walters*, 473 U.S. at 321 (citing *Mathews*, 424 U.S. at 344).

At stake here are Plaintiffs' interests in not having 10% of
their wages garnished or unreasonably excessive collection costs

---

[12]20 U.S.C. § 1095a(a)(1) prohibits garnishment in an amount
greater than 10 percent of the borrower's disposable pay.  Id.
"Disposable pay" is the borrower's pay remaining after all
deductions required by law.  20 U.S.C. § 1095a(e).

1  added to the principal of their debts for nonpayment of their

2  student loans.  Plaintiffs argue that the notice and hearing

3  procedures of 20 U.S.C. § 1095a as applied by Defendants, along

4  with the collection costs of 34 C.F.R. §§ 30.60 and 682.410,

5  present a serious risk of erroneous or unfair deprivation of

6  Plaintiffs' wages and subject them to unfair collection costs.

7  *See* Doc. 14 at 3:13-14, 4:24-25, and 10-12.

8      Congress in 20 U.S.C. § 1095a authorizes wage garnishments

9  to be applied to repayment of federally-guaranteed student loans

10  upon thirty days written notice to the individual borrower's last

11  known address, and advising the borrower:   (1)collection

12  proceedings have been initiated; (2) the nature and amount of

13  debt subject to collection; (3) the intention of the guaranty

14  agency (or Secretary) to collect the debt through deductions from

15  pay; (4) and an explanation of the borrower's rights under the

16  statute.  *See* 20 U.S.C. § 1095a(a)(2).

17      Among the process afforded is the right to a hearing where

18  the individual may challenge the existence, amount, and/or terms

19  of repayment of the debt.  The reasonableness of collection costs

20  is not mentioned in the statute; *see* 20 U.S.C. § 1095a, however

21  by direct reference this is an issue covered by the "amount" of

22  the debt.  By parity of reasoning, under 20 U.S.C. § 1082, the

23  guarantor may sue in state or federal court to enforce the debt;

24  the debtor may raise issues of compliance with collection cost

25  limits and any other matter related to the existence, amount, or

26  repayment of the debt.  To invoke the right to a hearing under 20

27  U.S.C. § 1095a(a)(5), the debtor is required to file a petition

28  requesting a hearing within fifteen days of the mailing of the

1   notice.   20 U.S.C. § 1095a(b).

2       By failing to request a hearing within fifteen days of the

3   mailing of the (a)(2) notice, the debtor waives his or her right

4   to a pre-garnishment hearing.   20 U.S.C. § 1095a(b).   If

5   requested after fifteen days have expired, the individual is

6   still entitled to a hearing but, "such hearing need not be

7   provided prior to the issuance of a garnishment order."   *Id*.   The

8   hearing official is required to issue a final decision within

9   sixty days following the individual's request for a hearing.   *Id*.

10      In determining whether a statute complies with the

11  constitutional requirements of due process, the court must first

12  determine what level of constitutional protection applies to the

13  property interest at stake.   *Delong v. Department of Health and*

14  *Human Services*, 264 F.3d 1334, 1341 (Fed.Cir.2001).   If the

15  interest at stake concerns a fundamental right, the statute is

16  subject to strict scrutiny review.   *Id*.   "Where the statute at

17  issue does not abridge a fundamental right or discriminate

18  against a suspect class, it is upheld if it 'bear[s] [a] rational

19  relation to a legitimate legislative goal' and is free from

20  invidious discrimination."   *Id*. (quoting *Weinberger v. Salfi*, 422

21  U.S. 749, 772 (1975)).   *Delong* held that an individual's interest

22  in continued employment was not a "fundamental right" whose

23  abridgment required strict scrutiny review.   *Id*. at 341-42.

24      Plaintiffs cannot demonstrate that any fundamental right not

25  to repay their student loans in accordance with their terms, or

26  to be free from a 10% wage garnishment, and/or not to be

27  subjected to unreasonable collection costs for defaulted loans

28  are "fundamental rights," 20 U.S.C. § 1095a, 34 C.F.R. §§ 30.60

                                57

1  and 682.410(b) are reviewed under the rational basis test.  *See,*

2  *e.g., Mark-Garner Assoc., Inc., v. Bensalem Township*, 616 F.2d

3  680, 689 (3rd Cir.1980), *cert. denied*, 450 U.S. 1029

4  (1981)("[t]he test for determining whether a law comports with

5  substantive due process is whether the law is rationally related

6  to a legitimate state interest."); *Shelton v. City of College*

7  *Station*, 780 F.2d 475, 482-3 (5th Cir. En banc), *cert denied,* 477

8  U.S. 905 (1986); *Moe v. Dinkins*, 669 F.2d 67, 68 (2nd Cir.1982);

9  *Shapiro v. Thompson*, 394 U.S. 618, 627-35 (1969)(*overruled on*

10 *other grounds by Edelman v. Jordon*, 415 U.S. 651, 670 (1974));

11 *Hodge v. Lynd*, 88 F.Supp.2d 1234, 1243 (D.N.M.2000)("in

12 substantive-due-process cases it is important to narrowly define

13 the asserted right, since at some level any right can be deemed

14 significant"); *Hutchins v. District of Columbia*, 188 F.3d 531,

15 538 (D.C.Cir.1999)(in assessing curfew placed on minors, state

16 court did not define interest at stake as "free movement of

17 people," but rather the right of a minor to be on the streets at

18 night without adult supervision).

19      Under the rational-relation test, a statute will be upheld

20 as constitutional so long as it is rationally related to a

21 legitimate government interest.  *Hodge*, 88 F.Supp.2d at 1243.  In

22 assessing the legitimacy of the government's interest in creating

23 the statute, the court looks to any countervailing interests of

24 the citizenry given the particular circumstances of each case.

25 *Id.  Nelson v. Diversified Collection Services, Inc.*, 961 F.Supp.

26 863, 868 (D.Md.1997), upheld the constitutionality of 20 U.S.C. §

27 1095a's notice requirements as affording due process.  *Nelson*

28 found that the notice provision of 20 U.S.C. § 1095a was

1 reasonably calculated to give notice of proceedings filed against
2 them and, accordingly, comported with due process requirements
3 where notice was mailed to debtor's last known address. *Id.* at
4 868-69.

5     In *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40
6 (1999), medical treatment providers challenged an insurer's
7 withholding of payment pending a review of reasonableness and
8 necessity. *Id.* at 58.  Because state law required medical
9 treatment to be reasonable and necessary, the Supreme Court found
10 no violation of due process by making the medical treatment
11 providers wait to receive payment pending such determination.
12 *Id.* at 61.  *United States v. James Daniel Good Real Property*, 510
13 U.S. 43 (1993) requires the government to afford notice and
14 hearing to the owner of a house subject to forfeiture as property
15 used in the commission of a federal drug offense prior to
16 seizure.  *Id.* at 62.  *FDIC v. Mallen*, 486 U.S. 230 (1988) found
17 that the president of a federal corporation was accorded due
18 process by virtue of notice and hearing procedures which rendered
19 a decision as to his suspension within ninety days thereof.  *Id.*
20 at 241-43.  *Barry v. Barchi*, 443 U.S. 55 (1979) held that a horse
21 trainer was only entitled to a prompt *post-deprivation* hearing
22 after having his license suspended for 15 days on suspicion of
23 unlawfully drugging horses.  *Id.* at 63-64.

24     There is no substantive constitutional infirmity in the
25 statutes, as a matter of law, to this extent the motion to
26 dismiss for failure to state a claim is GRANTED.
27 ///
28 ///

4.   Notice and Hearing Procedures Actually Employed by Defendants ("As Applied")

Plaintiffs contend that the 20 U.S.C. § 1095a notice and hearing as actually provided by Defendants were severely inadequate and insufficient to afford Plaintiffs' due process under the circumstances.  Doc. 14 at 30.  Plaintiffs claim that the notice and hearing procedures utilized by Defendants under 20 U.S.C. § 1095a fail to provide Plaintiffs with a meaningful opportunity to be heard.  *Id.*  Specifically, Plaintiffs claim that Defendants' notice and hearing practices:

(1) apply unreasonable collection costs of 18.5 % of the principal and interest based on 34 C.F.R. § 30.60 (Doc. 14 at 30);

(2) require collection costs to be paid prior to principal and interest (Doc. 14 at 31);

(3) misrepresent to Plaintiffs by way of dunning letters, validation letters, and credit reporting agencies that the entire collection cost must be paid in full (Doc. 14 at 31) and that garnishment could only be avoided by payment in full or agreement with the guaranty agency (Doc. 14 at 28);

(4) illegally promulgate rules that prohibit a challenge to the validity of the debt if the 'Request for Hearing' form is not sent directly to the guaranty agency, but instead is sent to the agent of the guaranty agency, having the effect of denying defaulting borrowers the right to challenge the validity of the debt at a hearing (Doc. 14 at 31);

(5) deny Plaintiffs the right to challenge the validity of the debt; deny Plaintiffs the right to discovery; and deny

60

1  Plaintiffs the right to challenge the reasonableness of

2  collection costs (*Id.*);

3      (6) misled Plaintiffs to believe that an "in-person" or

4  "telephonic" hearing would not allow for as detailed a written

5  record as an "in-writing" review; misled Plaintiffs to believe

6  that they carried the burden of proof to show that the debt did

7  not exist in full or in part or that the amount of the debt was

8  inaccurate (Doc. 14 at 29);

9      (7) misled Plaintiffs into believing that they would not be

10 entitled to a hearing if they entered into a repayment agreement

11 and subsequently defaulted and imposed an unconstitutional burden

12 of requiring Plaintiffs to fill out an "individual financial

13 statement" and misled them to believe the same was mandatory even

14 though it took into consideration child support received and

15 improperly required private, personal information of the

16 borrower's spouse (*Id.*);

17     (8) never allow a challenge to the reasonableness of

18 collection costs (*Id.*);

19     (9) chose individuals employed by ECMC to act as hearing

20 officers because they sought to take advantage of illegally

21 promulgated rules that prohibited a challenge to the validity of

22 the debt (*Id.*);

23     (10) failed to take action to prohibit knowing and willful

24 promulgation of rules that limit the challenge in hearings (*Id.*);

25     (11) failed to take action to prohibit knowing and willful

26 application of illegally-promulgated rules (*Id.*);

27     (12) promoted self-interest in ensuring the financial

28 vitality of guaranty agencies (*Id.*);

(13) took steps to ensure no challenge to the reasonableness of collection costs in their hearings by publishing notice in the Federal Register that states that they have already determined a formula under 34 C.F.R. § 30.60 which results in "reasonable" collection costs, despite Plaintiffs' loan contract provisions which provide for "reasonable" collection costs (Doc. 14 at 32);

(14) knowingly imposed flat fees of either 18.5% or 24.48% of the debt despite fact that such fee constitutes 10 to 150 times the actual collection costs (*Id.*);

(15) threatened hearing officers with fear of termination, removal, or reprimand if hearing officers permitted a challenge to the reasonableness of collection costs (*Id.*);

(16) complied with unlawful activity for fear of termination (*Id.*);

(17) issued directives to deny challenges to collection costs (Doc. 14 at 33);

(18) attributed payment first to collection costs, then interest and principal in contradiction to Congressional intent as set forth in 20 U.S.C. § 1078(c)(2)(D) (*Id.*);

(19) stated misleading and false dollar figures for collection costs (*Id.*);

(20) caused collection costs to increase by constantly re-calculating collection costs with each payment made pursuant to wage garnishment (*Id.*);

(21) conspired to exercise a pattern and practice of violating defaulting borrowers rights to a fair and full administrative hearing (*Id.*);

(22) intentionally deprived Plaintiffs of constitutionally-

1   protected rights to further their own financial gain (Doc. 14 at

2   34);

3       (23) applied an unconstitutional formula for determining

4   collection costs (Id.);

5       (24) failed to comply with 5 U.S.C. § 504, et seq. (Id.);

6       (25) unconstitutionally applied 20 U.S.C. § 1082(a)(Id.);

7   and

8       (26) assessed grossly excessive collection costs which bear

9   no rational relationship to actual collection costs (Doc. 14 at

10  35).

11      Title 20 U.S.C. § 1095a does not, *on its face,* deprive

12  Plaintiffs' rights to due process and bears a rational

13  relationship to the interest of the government sought to be

14  protected (fiscal interests in having debts and collection costs

15  paid by borrowers). It is *facially* constitutional.  Plaintiffs

16  as-applied allegations challenge the constitutionality of

17  Defendants' procedures in effecting its purpose and raise genuine

18  issues which require review of the adequacy of the various

19  Defendants' execution of their responsibilities under the HEA

20  with regard to wage garnishment and collection costs and

21  Defendants' compliance with the notice and hearing procedures

22  mandated by statute.  Defendants' Motion to Dismiss Plaintiffs'as

23  applied due process challenges is DENIED.

24

25          5.   Constitutionality of 20 U.S.C. § 1082(a)
                (4th Amendment - As Applied Challenges)
26

27      Plaintiffs argue that, because the Defendants failed to

28  provide adequate notice and opportunity for hearing, the

authorization of wage garnishment and application of unreasonably high collection costs constitutes an "unreasonable seizure" under the 4th Amendment of the United States Constitution.   Doc. 46 at 34-39.   In support of this argument, Plaintiffs cite *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *McIver v. United States*, 186 F.3d 1119 (9th Cir.1999); *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001); *Sniadach v. Family Finance Corp. Of Bay View*, 395 U.S. 337 (1969); and *Soldal v. Cook County*, 506 U.S. 56 (1992).

*Roth* involved alleged due process deprivations in violation of the 14th Amendment and contains no discussion of an individual's rights under the 4th Amendment to be free from unreasonable seizure.   408 U.S. 564-592.   *Roth* has no application to Plaintiffs' claims falling under the 4th Amendment.

*McIver* involved a drug-related criminal conviction where the defendants sought to have incriminatory evidence suppressed on the basis that it was obtained pursuant to an unreasonable search and seizure by the government in violation of the Fourth Amendment.   186 F.3d at 1122-23.   *McIver* held that the government did not commit an unreasonable search or seizure, in violation of the 4th Amendment, by taking the defendants' photographs via unmanned cameras in remote locations of a national forest.   *Id.* at 1125.   At issue in *McIver*, was whether the defendants had a "constitutionally reasonable expectation of privacy" in remote areas of a national forest so that the government's surveillance could be deemed an unreasonable invasion of that privacy.   *Id.* at 1124-25 (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan's concurrence)).

1    By contrast, Plaintiffs argue that Defendants' wage

2    garnishment and assessment of collection costs constitute an

3    unreasonable seizure because they were not afforded the

4    appropriate mechanisms of due process.  Plaintiffs' argument has

5    nothing to do with government invasion of their privacy and does

6    not implicate the 4th Amendment right to be free from

7    unreasonable search or seizure.  *McIver* has no relevance to the

8    present case.  Like *Roth, supra,* both *Lujan* and *Sniadach* involve

9    allegations of due process deprivations in violation of the 14th

10   Amendment.  *Lujan*, 532 U.S. at 194; *Sniadach*, 395 U.S. at 341-42.

11   Because neither *Lujan* nor *Sniadach* discusses unreasonable seizure

12   under the 4th Amendment, these cases have no application to

13   Plaintiffs' argument thereunder.

14       *Soldal* held 4th Amendment protections against state-effected

15   unreasonable seizure were implicated in instances where property

16   was seized, regardless of whether the appropriateness of the

17   seizure was raised in a criminal or civil context, and regardless

18   of whether privacy interest were at stake.  506 U.S. at 66-67.

19   *Soldal* notes that citizens' 4th Amendment rights are implicated

20   whenever "in the absence of consent or a warrant permitting the

21   seizure of the items in question, such seizures can be justified

22   only if they meet the probable-cause standard, *Arizona v. Hicks*,

23   480 U.S. 321, 326-27 (1987), and if they are unaccompanied by

24   unlawful trespass...because, the absence of a privacy interest

25   notwithstanding, '[a] seizure of the article... would obviously

26   invade the owner's possessory interest.'" *Soldal*, 506 U.S. at 66

27   (quoting *Horton*, 496 U.S. at 134).  *Soldal* notes, however, that

28   "[w]hen 'operational necessities' exist, seizures can be

1  justified on less than probable cause."   506 U.S. at 66, fn. 9

2  (citing *Arizona*, 480 U.S. at 327).   The issue presented here is

3  whether a guarantee agency's garnishment of an individual's wages

4  and assessment of collection costs to enforce repayment of

5  defaulted federally-guaranteed student loans rises to the level

6  of a "seizure" of property capable of implicating that

7  individual's rights under the 4th Amendment.

8      No case has been located which applies the 4th Amendment in

9  the context of wage garnishment or assessment of collection costs

10  pursuant to statute.   When determining the scope and

11  applicability of the 4th Amendment's protections, the Court is

12  guided by common law.   See, e.g., *Gerstein v. Pugh*, 420 U.S. 103,

13  114-15 (1975); *United States v. Hall*, 348 F.2d 837 (2nd Cir.),

14  *cert.denied,* 382 U.S. 947 (1965).

15      *Maryland v. Macon*, 472 U.S. 463 (1985) held that a seizure,

16  implicating one's rights under the 4th Amendment, occurs when

17  there is some "meaningful interference with individual's

18  possessory interest" in property seized.   *Id*. at 469 (quoting

19  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).   *See also*,

20  *Bonds v. Cox*, 20 F.3d 697, 701-02 (6th Cir.1994)(combination of

21  broken doors, mutilated vinyl siding, cracked commode, holes in

22  wall, and broken dishes constituted a "seizure" of property

23  implicating the 4th Amendment); *U.S. v. Fifty-Three Thousand*

24  *Eighty-Two Dollars in U.S. Currency, $53,082.00*, 985 F.2d 245,

25  248 (6th Cir.1993)(testing money with narcotics detection dog

26  constitutes seizure implicating 4th Amendment); *Miller v. City of*

27  *Columbus*, 920 F.Supp. 807, 817 (S.D.Ohio.1996)(removal of trash

28  bag from plaintiff's residence required analysis under 4th

Amendment).

*U.S. v. White*, 268 F.Supp. 998 (D.D.C.1966) found a "seizure" under the 4th Amendment connotes forcible dispossession of property from its owner. *Id.* at 1004 (citing *Caldwell v. United States*, 338 F.2d 385, 388 (8th Cir.1964)). *Horton v. California*, 496 U.S. 128 (1990) deemed "seizure" of property under the 4th Amendment as one which deprives an individual of "dominion" over his or her property. *Id.* at 133. *See also*, *U.S. v. Marti*, 321 F.Supp. 59, 63 (E.D.N.Y.1970)(a "seizure" under the 4th Amendment occurs when there is a forcible or secretive dispossession of property against the will of the possessor or owner); *United States v. Grant*, 112 F.3d 239, 241 (6th Cir. 1997) (moving an individual's bag from overhead compartment in passenger bus did not constitute a "seizure" implicating the 4th Amendment); *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996) (refusal to allow corporate officer to retrieve personal property from his office, allowing officer's former business partners to steal and destroy his private files, did not constitute "seizure" under 4th Amendment where there was no knowledge that officer's property remained in office); *United States v. Salgado*, 917 F.Supp. 996, 1000-01 (W.D. N.Y. 1996) (removal of luggage from trunk of rented vehicle at border crossing did not constitute "seizure" for purposes of 4th Amendment); *United States v. David*, 756 F.Supp. 1385, 1389-90 (D.Nev. 1991)(use of defendant's computer memo book during interview for several minutes not a "seizure" for 4th Amendment purposes).

*Freeman v. City of Dallas*, 242 F.3d 642, 664-65 (5th Cir.

2001), *cert. denied,* 534 U.S. 817, held that a city's condemnation and subsequent demolition of apartment buildings as "urban nuisances" constituted a "seizure" under the 4th Amendment. *But Cf., United States v. 935 Cases More or Less, Each Containing 6 No. 10 Cans Tomato Puree,* 136 F.2d 523, 526-27 (6th Cir. 1943), *cert.denied,* 320 U.S. 778 (condemnation of allegedly adulterated food in interstate commerce involving seizure of the food under attachment not a "seizure" under the 4th Amendment). Taking of property pursuant to a writ of attachment, regular on its face, does not implicate the 4th Amendment's prohibition of unreasonable seizures. *See United States v. Dadurian,* 450 F.2d 22, 24 (1st Cir.1971) *cert.denied,* 405 U.S. 1044.

The United States Supreme Court in *G.M. Leasing Corp. v. United States,* 429 U.S. 338 (1977) found that when a statute authorized a government agency to collect taxes "by levy upon all property and rights to property," belonging to a person who "neglects or refuses to pay," execution upon the individual's property did not, by itself, constitute a "seizure" implicating the 4th Amendment. *Id.* at 338. *G.M. Leasing* determined, however, that the method by which such seizure took place might constitute an unreasonable intrusion of privacy prohibited by the 4th Amendment: "It is one thing to seize without a warrant property resting in an open area or seizable by levy without an intrusion into privacy, and it is quite another thing to effect a warrantless seizure of property, even that owned by a corporation, situated on private premises to which access is not otherwise available for the seizing officer." *Id.* at 354. *See*

68

1  *also, United States v. McCormick*, 502 F.2d 281, 288-89 (9th

2  Cir.1974)(statute which did not specifically require a warrant

3  for seizure of automobiles did not violate the 4th Amendment

4  where an independent exception to the general warrant requirement

5  could justify a warrantless seizure).

6      *Lojeski v. Boandl*, 788 F.2d 196, 199-200 (3rd Cir. 1986)

7  found that imposition of a lien on a taxpayer's farm and a levy

8  on a taxpayer's bank account did not violate any interests

9  capable of implicating 4th Amendment protections.  *United States*

10 *v. Poulsen*, 41 F.3d 1330, 1335-37 (9th Cir.1994) found that an

11 individual had no property or privacy interests protected under

12 the 4th Amendment in the contents of a storage locker seized

13 pursuant to a rental agreement.  *Bleavins v. Bartels*, 326 F.3d

14 887, 890 (7th Cir. 2003) held that the 4th Amendment did not

15 require a judicial warrant for seizure of property that is

16 subject to a valid tax lien and not an improper intrusion on

17 privacy rights.  *Tilley v. United States*, 270 F.Supp.2d 731, 736

18 (M.D.N.C.2003) held that a warrant is not required under the 4th

19 Amendment in order to collect taxes by levy so long as the levy

20 does not otherwise involve an unconstitutional invasion of

21 privacy.  *United States v. Roccio*, 981 F.2d 587, 591 (1st Cir.

22 1992), *cert.denied* 509 U.S. 932, *rehearing denied* 509 U.S. 946,

23 held that IRS agents needed no warrant to seize a vehicle from a

24 debtor's driveway where it was clearly visible from the street.

25     *Nelson v. Silverman*, 888 F.Supp. 1041 (S.D.Cal.1995) held

26 that a warrant was not necessary for seizure of property in

27 satisfaction of a tax claim and could not implicate one's rights

28 under the 4th Amendment unless such seizure constituted an

69

invasion of the taxpayer's privacy. *Id.* at 1046 (citing *G.M. Leasing, Maraziti v. First Interstate Bank*, 953 F.2d 520 (9th Cir. 1992), and *Maisano v. Welcher*, 940 F.2d 499 (9th Cir. 1991)).

*United States v. Miller*, 425 U.S. 435, 440 (1976) found that a bank depositor had no protectable 4th Amendment interest in bank records consisting of microfilms, checks, deposit slips, or other account records. *See also, In re Grand Jury Subpoena Duces Tecum*, 549 F.2d 1317 (9th Cir. 1977) *cert.denied,* 431 U.S. 930 (following *United States v. Miller*, 425 U.S. 435). *United States v. Equitable Trust Co.*, 524 F.Supp. 1133, 1135 (D.C.Md.1981) found that a bank's customers, who failed to honor an IRS tax levy, did not have an expectation of privacy in their bank records sufficient to warrant protection under the 4th Amendment.

In *Cinea v. Certo*, 84 F.3d 117 (3rd Cir.1996), the Third Circuit held that where authorities were operating under an order of execution, seizure of an individual's property was "reasonable" under the 4th Amendment, *regardless of the legitimacy of the underlying order*. Noting that the ultimate standard under the 4th Amendment was determining whether the seizure was "reasonable," the court found:

> In this case, the constables had authority to levy on
> plaintiffs' property in the form of an order of
> execution from a district justice. As the Supreme
> Court noted in Soldal, making a showing of
> unreasonableness when the officer in question was
> acting pursuant to a court order 'would be a laborious
> task indeed.' Moreover, that the levies coincided with
> plaintiffs' evictions does not transform the levies
> into unreasonable seizures in violation of the Fourth
> Amendment.  While we recognize the hardship that
> plaintiffs suffered as a result of the combination of
> levy and eviction, we cannot conclude that either the
> constables or the rules under which they acted violate

1      the Constitution.

2 *Id.* at 124 (quoting *Soldal*, 506 U.S. at 71).

3      In *Cameron v. I.R.S.*, 593 F.Supp. 1540, 1554 (N.D.Ind.1984),

4 *affirmed* 773 F.2d 126, the Seventh Circuit affirmed the district

5 court's holding that the IRS did not violate an individual's

6 rights under the 4th Amendment by failing to obtain a warrant of

7 seizure prior to withholding his personal property pursuant to a

8 levy against his wages. *Snyder v. I.R.S.*, 596 F.Supp. 240, 249-

9 50 (N.D.Ind.1984) held that withholding of federal income taxes

10 from taxpayer's wages was not illegal "seizure" under the 4th

11 Amendment because the wages were not monies already in the

12 taxpayer's private possession, nor subject to his private

13 control, and, as such, withholding did not constitute an invasion

14 of privacy.

15      Under the terms of Plaintiffs' various loan agreements for

16 the federally-guaranteed student loans upon which Plaintiffs have

17 defaulted, seizure of Plaintiffs' wages for the purposes of

18 repaying monies borrowed by Plaintiffs may correctly be deemed a

19 voluntary surrender authorized by the express language of the

20 loan documents.  Taking of property through voluntary surrender

21 does not implicate 4th Amendment protections. *See, e.g., United*

22 *States v. Streich,* 759 F.2d 579, 585-86 (7th Cir.1985),

23 *cert.denied,* 474 U.S. 860, *rehearing denied* 474 U.S. 1000; *United*

24 *States v. Burns,* 662 F.2d 1378, 1384-85 (11th Cir.1981); *United*

25 *States v. Sherwin,* 539 F.2d 1, 8 (9th Cir.1976); *United States v.*

26 *Nelson,* 443 F.2d 908, 908-09 (9th Cir.1971).

27      In *Frank Irey, Jr., Inc. v. Occupational Safety and Health*

28 *Review Com'n,* 519 F.2d 1200, 1205 (3rd Cir.1974), *cert.denied on*

*this issue*, 430 U.S. 442 (1977), the Third Circuit upheld statutory authorization for the imposition of significant civil penalties ($10,000.00) for willful violations and found that, despite preclusion of judicial review for agency findings of fact related thereto, such penalties would not implicate rights under the 4th Amendment.

The wages here were garnished, and collection costs assessed, in accordance with orders issued by HEA hearing officers pursuant to statute. Even if the procedures used may be violative of due process, they do not implicate Plaintiffs 4th Amendment rights. Defendants' Motion to Dismiss Plaintiffs claims arising under the 4th Amendment is GRANTED.


### 6.   Judicial Immunity

A judge acting in his judicial capacity is typically immune from suit for such judicial acts. *Simmons v. Sacramento County Superior Court,* 318 F.3d 1156, 1161 (9th Cir. 2003)(citing *Harvey v. Waldron*, 210 F.3d 1008, 1012 (9th Cir. 2000)). Even though the language of 42 U.S.C. § 1983 "makes liable 'every person' who under color of law deprives another person of his civil rights," the Supreme Court has concluded that the principle of judicial immunity was not abolished by this statute. *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (quoting 42 U.S.C. § 1983). *See, e.g., Stump v. Sparkman*, 435 U.S. 349, 356 (1978)("doctrine of judicial immunity was applicable in suits under § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, for the legislative record gave no indication that Congress intended to abolish this long-established principle"); *Weddell v. County of Carson City*, No.

CV-99-00553-RAM, 2003 WL 133125, at *10 n.1 (9th Cir. Jan. 16, 2003) ("[a]ny abolition or significant alteration of [the judicial immunity] doctrine would be inappropriate given its repeated application by both the Supreme Court and the Ninth Circuit").

The Supreme Court has stated, "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson*, 386 U.S. at 553-554.   This "immunity applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985) (quoting *Bradley v. Fisher*, 13 Wall. 335, 347 (1872)).   So sweeping is this protection that "immunity applies even when the judge is accused of acting maliciously and corruptly." *Pierson*, 386 U.S. at 554.   The Supreme Court has held "judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial."[13]   *Mireles*, 502 U.S. at 11-12.

---

[13] The Supreme Court has stated the policy reasons for affording judges such broad protection:

> [Judicial immunity] is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences. It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging

1        Although unfairness and injustice to a litigant may
result on occasion, 'it is a general principle of the
2        highest importance to the proper administration of
justice that a judicial officer, in exercising the
3        authority vested in him, shall be free to act upon his
own convictions, without apprehension of personal
4        consequences to himself.'

5  *Mireles v. Waco*, 502 U.S. 9, 10 (1991)(quoting *Bradley v. Fisher*,

6  13 Wall. 335, 347 (1872)).  "With this judicial immunity firmly

7  established, the Court has extended absolute immunity to certain

8  others who perform functions closely associated with the judicial

9  process."  *Cleavinger v. Saxner*, 474 U.S. 193 (1985).

10     Plaintiffs argue that Defendants Hundley and Milk do not

11  qualify for judicial immunity because their role as hearing

12  officers for wage garnishment and collection cost disputes

13  arising out of federally-guaranteed student loans and the HEA is

14  not "'functionally comparable' to that of a judge."  Doc. 45 at 6

15  (quoting *Butz v. Economou*, 438 U.S. 478, 506 (1978)).

16     Judicial immunity has been extended to provide absolute

17  immunity to federal hearing officers, administrative law judges,

18  both federal and state prosecutors, police officers called as

19  witnesses in judicial proceedings, grand jurors, and federal

20  parole officials.  *Id.* at 200 citing *Butz*, 438 U.S. at 513

21  ("there can be little doubt that the role of the modern federal

22  ————————————————

23     malice or corruption. Imposing such a burden on judges would
contribute not to principled and fearless decision making
24     but to intimidation.
25

26  *Pierson*, 386 U.S. at 554 (quoting in *Bradley*, 13 Wall. at 349);
see *Weddell*, 2003 WL 133125, at *10 n.1 (finding the policy
27  objectives behind the judicial immunity doctrine to be "the
discouragement of collateral attacks and the promotion of
28  appellate procedures").

hearing examiner or administrative law judge ... is 'functionally comparable' to that of a judge."); *Yaselli v. Goff*, 275 U.S. 503 (1927)(absolute immunity extended to federal and state prosecutors); *Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20 (1976)(grand jurors); *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)(police officers testifying in judicial proceedings); *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir.1981)(federal parole officials); *Evans v. Dillahunty*, 711 F.2d 828, 830-31 (9th Cir.1983)(same); and *United States ex rel. Powell v. Irving*, 684 F.2d 494 (9th Cir.1982)(same).

In *Cleavinger*, 474 U.S. at 203-04, the Supreme Court ruled that prison officials, hearing cases whereby inmates charged with rule infractions are subject to discipline on a finding of guilt, did not function as "professional hearing officers" but, rather, were merely prison officials "temporarily diverted from their usual duties." *Id.* *Cleavinger* found that the prison officials' functions were more closely related to the school board members in *Wood v. Strickland*, 420 U.S. 308, 319 (1975), who functioned as "'adjudicators in the school disciplinary process,' [who] were to 'judge whether there have been violations of school regulations and, if so, the appropriate sanctions for the violations.'" *Cleavinger*, 474 U.S. at 204 (quoting *Strickland*, 420 U.S. at 319). Unlike the prison officials in *Cleavinger* or the school board members in *Strickland*, Defendants Hundley and Milk are professional hearing officers who are supposed to be objective, third party neutrals. *See* 20 U.S.C. § 1095a(b) ("A hearing under (a)(5) of this section may not be conducted by an individual under the supervision or control of the head of the

1 guaranty agency, except that nothing in this sentence shall be
2 construed to prohibit the appointment of an administrative law
3 judge.") *Id.*

4      Due to the adjudicatory nature of a 20 U.S.C. § 1095a
5 hearing, the consideration of evidence to reach decisions as to
6 the existence, amount, and enforcement of student loan debts,
7 pursuant to federal law, authorizing the utilization of such
8 decision-makers, the role of hearing officers Hundley and Milk in
9 making wage garnishment and collection cost decisions is
10 functionally comparable to the role of an administrative law
11 judge or federal hearing officer and, accordingly, entitles
12 Hundley and Milk to assert judicial immunity.  *Id.*  Judicial
13 immunity, however, is not absolute.

14      There are two exceptions to the general rule of judicial
15 immunity.  One has no immunity from liability for nonjudicial
16 acts; nor is one immune for judicial acts conducted clearly
17 outside his jurisdiction.  *See Mireles*, 502 U.S. at 11-12.
18 "[I]mmunity is overcome in only two sets of circumstances.
19 First, a judge is not immune from liability for nonjudicial
20 actions, i.e., actions not taken in the judge's judicial
21 capacity.  Second, a judge is not immune for actions, though
22 judicial in nature, taken in the complete absence of all
23 jurisdiction." *Id.* (citing *Forrester v. White*, 484 U.S. 219, at
24 227-229 (1988) and *Stump*, 435 U.S. at 356-60).

25      Here Plaintiff takes issue with the qualifications and
26 propriety of Charles Hundley and Peggy Milk serving as hearing
27 officers.  Doc. 14 at 6.  Specifically, Plaintiffs indicate that
28 both Hundley and Milk were biased in their decisions affecting

1   Plaintiffs' wage garnishment and collection costs proceedings due
2   to "improper political and financial pressure from ECMC to deny
3   [Plaintiffs Stomberg and Czerny] the relief requested."  Doc. 45
4   at 3.  Rendering a decisional order constitutes a judicial act
5   even if allegedly biased or coerced.  *See, e.g.*, *Simmons,* 318
6   F.3d at 1161; *Rosenthal v. Justices of the Sup. Ct. of Cal.*, 910
7   F.2d 561 (9th Cir.1990).  There is another remedy to redress
8   erroneous decisions.  Whether Hundley and/or Milk should be
9   entitled to immunity for the act of making decisions, authorizing
10  garnishment and collection costs, rests on the extent of their
11  jurisdiction over the subject matter.  *Id*.  On this issue the
12  Supreme Court draws a fine line of distinction.  Judicial
13  immunity does not apply for acts done clearly *outside* one's scope
14  of jurisdiction, however, immunity does extend to acts done
15  merely in *excess* of jurisdiction.  *See, e.g.*, *Sparkman*, 435 U.S.
16  357 (quoting Bradley, 13 Wall. at 351-52); *Rosenthal*, 910 F.2d at
17  565-66.

18       The plaintiff in *Rosenthal* argued that Chief Justice Lucas,
19  who had previously recused himself from Rosenthal's case in the
20  California Supreme Court, "violated Rosenthal's constitutional
21  rights [under 42 U.S.C. § 1983] by nevertheless signing on behalf
22  of the court an order denying Rosenthal's petition for
23  rehearing." *Rosenthal,* 910 F.2d at 565.  Despite his prior
24  recusal, the Chief Justice "remained immune from suit.  A judge
25  is immune from suit under 42 U.S.C. § 1983 for acts in excess of
26  his jurisdiction, so long as the acts themselves were judicial."
27  *Id*. at 565-66 (citations omitted).  Even though Judge Lucas may
28  have exceeded his jurisdiction in issuing the order, a subsequent

1   order of the court caused this act to be harmless error and

2   because "[t]he signing of this order was manifestly a judicial

3   act," he remained immune from suit. *Id.* at 566.   The Supreme

4   Court recognizes a distinction between actions taken in "excess"

5   of jurisdiction and actions taken in clear absence of all

6   jurisdiction. *Stump*, 435 U.S. at 357 (quoting *Bradley*, 13 Wall.

7   at 351-52).

8       A distinction must be here observed between excess of
        jurisdiction and the clear absence of all jurisdiction
9       over the subject-matter.  Where there is clearly no
        jurisdiction over the subject-matter any authority
10      exercised is a usurped authority, when the want of
        jurisdiction is known to the judge, no excuse is
11      permissible.  But where jurisdiction over the subject-
        matter is invested by law in the judge, or in the court
12      which he holds, the manner and extent in which the
        jurisdiction shall be exercised are generally as much
13      questions for his determination as any other questions
        involved in the case, although upon the correctness of
14      his determination in these particulars the validity of
        his judgments may depend.

15

16  *Id.*

17      The Supreme Court addressed what constitutes a "clear

18  absence of all jurisdiction," in the *Bradley* case:

19      In *Bradley*, the Court illustrated the distinction
        between lack of jurisdiction and excess of jurisdiction
20      with the following examples: if a probate judge, with
        jurisdiction over only wills and estates, should try a
21      criminal case, he would be acting in the clear absence
        of jurisdiction and would not be immune from liability
22      for his action; on the other hand, if a judge of a
        criminal court should convict a defendant of a
23      nonexistent crime, he would merely be acting in excess
        of his jurisdiction and would be immune.

24

25  *Stump,* 435 U.S. at 357 n.7 (citing *Bradley*, 13 Wall. at 352).

26  The Ninth Circuit has echoed the Supreme Court's holding in

27  *Stump*.

28      To determine if the judge acted with jurisdiction,

78

courts focus on whether the judge was acting clearly
beyond the scope of subject matter jurisdiction in
contrast to personal jurisdiction. Where not clearly
lacking subject matter jurisdiction, a judge is
entitled to immunity even if there was no personal
jurisdiction over the complaining party. Jurisdiction
should be broadly construed to effectuate the policies
supporting immunity.

*Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir.1986) (citations

omitted).  A judge only loses his immunity if he engages in

judicial actions in an area where the judge has no subject matter

jurisdiction.

Here, Plaintiffs allege that by issuing orders authorizing

Plaintiffs' wage garnishment and collection costs, Hundley and

Milk were merely carrying out their commercialized function as

"aggressive adversaries" for the guaranty agencies.  *Id.* at 3.

By making decisions as hearing officers on issues raised by

enforcement of allegedly delinquent student loans Hundley and

Milk are alleged by the complaint to be acting in a quasi-

judicial capacity performing quasi-judicial functions, even if

they are alleged to be "biased."  This is not activity in "clear

absence of all jurisdiction over the subject matter." *Stump*, 435

U.S. 357 (quoting *Bradley*, 13 Wall. at 351-52).

Defendants' motion to dismiss officers Milk and Hundley on

the basis of judicial immunity is GRANTED.  Leave to amend will

be given if Plaintiffs, under Rule 11, can assert in good faith

they can allege facts to overcome judicial immunity.


7.   Implied Right to Judicial Review under the
     Administrative Procedure Act

Plaintiffs argue that the HEA creates an implied right of

1  judicial review of hearing officer determinations under 20 U.S.C.

2  1095a.   Because orders of wage garnishment, collection costs, and

3  benefit offsets under the HEA are subject to judicial review to

4  determine compliance with minimum due process requirements, the

5  need for a judicially implied right of review under the HEA is

6  unnecessary.

7

8          8.   Amendment under Bivens

9       Plaintiffs request leave to amend their complaint to assert

10 claims under *Bivens v. Six Unknown Names*, 403 U.S. 388 (1971).

11 A *Bivens* action is "an implied private action for damages against

12 federal *officers* alleged to have violated a citizen's

13 constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S.

14 61, 66 (2001).   In order to state a claim under *Bivens*, a

15 Plaintiff must allege particular officials intentionally violated

16 Plaintiff's constitutional rights.   *Id.*

17      "It must be remembered that the purpose of *Bivens* is to

18 deter *the officer*."   *FDIC v. Meyer*, 510 U.S. 471, 485 (1994)

19 (emphasis in the original).   "[T]he threat of suit against an

20 individual's employer was not the kind of deterrence contemplated

21 by *Bivens* ... if a corporate defendant is available for suit,

22 claimants will focus their collection efforts on it, and not the

23 individual directly responsible for the alleged injury."   *Corr.*

24 *Servs. Corp. v. Malesko*, 534 U.S. 61, 70-1 (2001).   The U.S.

25 Supreme Court has made clear that only individuals can be sued

26 under *Bivens*.   *Id.*   While Plaintiffs do allege that their

27 constitutional rights were violated by the individual defendants'

28 acting beyond their authority and denying Plaintiffs due process

                                80

1    of law in connection with administrative procedures under the

2    HEA, they argue Hundley and Milk are employed by a private

3    entity, ECMC, and are not federal officers in the plain meaning

4    of the term.   A question remains as to whether hearing officers,

5    privately contracted to determine loan repayment procedure under

6    the HEA, act as "government officials" in the rendering of their

7    determinations under the HEA for purposes of a claims under

8    *Bivens.*

9        The circuits are split as to whether a *Bivens* claim can be

10   made against private party "federal actors."   *See, DeVargas v.*

11   *Mason & Hanger-Silas Mason Co., Inc.*, 844 F.2d 714, 720 (10th

12   Cir. 1988) (noting, in dicta, the conflicting authority and

13   circuit split but not ruling directly on the issue).   The First

14   Circuit has refused to recognize *Bivens* actions against private

15   parties.   *Fletcher v. Rhode Island Hosp. Trust Nat'l Bank*, 496

16   F.2d 927, 932 fn. 8 (1st Cir.), cert.denied, 419 U.S. 1001

17   (1974).   The Fourth, Eighth, Tenth and Eleventh Circuits have

18   expressly remained undecided as to whether a *Bivens* claim may be

19   asserted against a private party.   *Stevens v. Morrison-Knudsen*

20   *Saudi Arabia Consortium*, 576 F.Supp. 516, 520-21 (D.Md.1983),

21   *aff'd mem.*, 755 F.2d 375 (4th Cir. 1985); *McNally v. Pulitzer*

22   *Publishing Co.*, 532 F.2d 69, 75-76 (8th Cir.), *cert. denied*, 429

23   U.S. 855 (1976); *DeVargas*, 844 F.2d at 720 (10th Cir. 1988);

24   *Morast v. Lance*, 807 F.2d 926, 930-31 (11th Cir. 1987).

25       At least four circuits, including this Circuit, have held

26   that a private party federal actor *may* be liable in a *Bivens*

27   action.   *See Reuber v. United States*, 750 F.2d 1039, 1053-57

28   (D.C.Cir. 1984); *Dobyns v. E-Systems, Inc.*, 667 F.2d 1219, 1227-

81

1  28 (5th Cir.1982); *Yiamouyiannis v. Chemical Abstracts Serv.*, 521

2  F.2d 1392, 1393 (6th Cir. 1975), *cert.denied*, 439 U.S. 983

3  (1978); *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328,

4  1337-38 (9th Cir. 1987).

5      Plaintiffs will be permitted to amend their complaint to

6  allege *Bivens* causes of action for claims not otherwise barred

7  under the applicable statute of limitations; *see, e.g., Flowers*

8  *v. First Hawaiian Bank*, 295 F.3d 960, 976 (9th Cir. 2002) (citing

9  *Cook, Perkins & Lieke, Inc. v. N. Cal. Collection Serv., Inc.*,

10  911 F.2d 242, 247 (9th Cir. 1990) (per curiam) (no abuse of

11  discretion to deny futile amendment)); *see also Lockheed Martin*

12  *Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir.

13  1999) (where legal basis for a claim is tenuous, futility

14  supports refusal to grant leave to amend), and where the claim is

15  not barred by judicial immunity.  A Bivens claim does not trump

16  judicial immunity where the responsible private federal party

17  acts in a quasi-judicial capacity.

18      The applicable statute of limitations for a *Bivens* claim in

19  California is one year.  *See, e.g., Papa v. United States*, 281

20  F.3d 1004, 1009 (9th Cir. 2002).

21          Although federal law determines when a Bivens claim
           accrues, the law of the forum state determines the
22          statute of limitations for such a claim.   In
           California, the statute of limitations is one year.
23

24  *Id.*  (citing *Western Center for Journalism v. Cederquist*, 235

25  F.3d 1153, 1156 (9th Cir. 2000) and *Van Strum v. Lawn*, 940 F.2d

26

27

28

406, 408-10 (9th Cir.1991)).[14]

Under federal law, a claim accrues for statute of limitations purposes when the plaintiff knows, or should know, of the injury which is the basis of the cause of action. *Fink*, 192 F.3d at 914 (citing *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996)). *See also, Briley v. California*, 564 F.2d 849 (9th Cir. 1977).

An Amended Complaint relates back to the original Complaint for statute of limitations purposes in accordance with F.R.C.P. Rule 15(c)(2). Rule 15(c)(2) provides in relevant part:

> An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, ...

Fed. R. Civ. Pro. 15(c). For statute of limitations purposes, Plaintiffs' complaint was filed on October 11, 2002. *See* Doc. 1, at 1. Accordingly, any *Bivens* claims which accrued prior to

---

[14] *Van Strum*, 940 F.2d at 408-10 held that the state's personal injury statute of limitations applies to *Bivens* actions. At the time Plaintiffs' filed the original complaint, Cal.Civ.Proc. Code section 340(3) provided that the statute of limitations period for personal injury actions in California was one year. Cal.Civ.Proc. Code § 340(3) was amended effective January 1, 2003, expanding the period of limitations to two years. The statutory amendment is not retrospective except for claims made by victims of terrorist actions on September 11, 2001. *See* CAL. SENATE BILL 688, sections (c) & (d). *Abreu v. Ramirez*, 284 F. Supp. 2d 1250, 1256 (C.D. Cal. 2003). "Statutes are presumed to be prospective only and will not be applied retroactively unless such intention clearly applies in the language of the statute itself." *Krusesky v. Baugh*, 138 Cal. App. 3d 562, 566, (1982). *See also Krupnick v. Duke Energy Morro Bay, L.L.C.*, 9 Cal.Rptr.3d 767(2004).

October 11, 2001, is necessarily be barred under the applicable statute of limitations, absent tolling.

Although Plaintiffs' complaint is unclear as to when each of the respective Plaintiffs' claims arose, the exhibits filed in conjunction with the complaint sets forth dates which arguably reflect the dates of accrual of the Plaintiffs' respective claims. *See* Doc. 2. Accordingly to Doc. 2, Plaintiff Comer received a notice of her 2001 tax refund offset on April 3, 2002. Doc. 2, Exhibit 3. According to Doc. 2, Plaintiff Hutchins received notice that his social security benefits had been offset by Defendant on July 3, 2002. Doc. 2, Exhibit 5B. An "Order of Withholding from Earnings" with regard to Plaintiff Stomberg was allegedly issued on August 15, 2001. *See* Doc. 2, Exhibit 10A. An "Order Withholding from Earnings" was allegedly issued with regard to Plaintiff Czerny on December 18, 2000. Doc. 2, Exhibit 11C. Based upon Plaintiffs' allegations and the exhibits filed with Plaintiffs' complaint (Doc. 2), it would appear that while Plaintiffs Comer and Hutchins' claims fall within the one-year statute of limitations, Plaintiffs' Stromberg and Czernys' do not. In an abundance of caution, all Plaintiffs will be granted leave to amend their claims to allege the exact dates upon which the Plaintiffs' causes of action accrued so that their viability under the applicable statute of limitations may be more accurately ascertained.

Plaintiff is granted leave to AMEND the complaint to allege *Bivens* claims against any individual defendants who Plaintiffs allege have personally caused any deprivation of civil rights under *Bivens* and must specifically allege dates upon which the

1  respective Plaintiffs' actions arose.

2

3                    VII.   CONCLUSION

4      For all the foregoing reasons:

5      1.   Defendants' motion for judicial notice is GRANTED in

6  part and DENIED in part.   Defendants' motion for judicial notice

7  of the authenticity and existence of *George v. U.S.A.*, 149

8  F.Supp.2d 1195 (E.D. Cal. 2000), as a prior proceeding, of the

9  order of September 21, 2000, and of the pleadings and filings

10 thereunder as documents which are all matters of public record is

11 GRANTED.   To the extent Defendants' seek judicial notice of the

12 veracity of any of the arguments, disputed facts, or conclusions

13 of fact made therein, Defendants' motion for judicial notice is

14 DENIED;

15     2.   The parties have stipulated to dismiss Claim I of

16 Plaintiffs' First Amended Complaint with Prejudice.   *See* Doc. 16,

17 Stipulation of Dismissal of Claim I, filed Apr. 3, 2003.

18 Accordingly, Defendants' motions to dismiss Claim I is GRANTED;

19     3.   Plaintiffs request to strike Claim II is GRANTED WITH

20 PREJUDICE; Defendants' motion to dismiss Claim II is MOOT;

21     4.   Plaintiffs request that Claim III be dismissed, *see* Doc.

22 48 at 9, is GRANTED;

23     5.   Defendants' motions to dismiss Plaintiffs' claims

24 alleging violations of the First Amendment are GRANTED;

25     6.   Defendants' motion to dismiss the RICO claim is GRANTED;

26     7.   Defendants' motions to dismiss Plaintiffs' claims of

27 violations of due process is GRANTED as to the substantive due

28 process challenge to the loans, and DENIED as to the as-applied

                              85

1 challenge;

2    8.  Defendants' motions to dismiss as to Defendants Hundley

3 and Milk on the grounds of judicial immunity and as to the Bivens

4 claim are GRANTED, with leave to amend, in accordance with the

5 requirements stated above;

6    9.  ECMC is a fiduciary of the U.S. Department of Education

7 and not subject to the Fair Debt Collection Practices Act.  The

8 motion to dismiss this claim is GRANTED;

9    10. ECMC's conduct as a U.S. Department of Education

10 fiduciary and its enforcement of federal student loans for which

11 quasi-judicial review is provided, is subject to review under the

12 A.P.A., 5 U.S.C. § 702 et seq., as the action is not independent

13 of the Department of Education and is undertaken on its behalf.

14 The motions to dismiss this claim is DENIED, without prejudice,

15 subject to developing a more complete factual record; and

16    11.  Any amended complaint shall be filed within twenty (20)

17 days following the date of service of this order by the clerk.

18

19 SO ORDERED.

20

21 DATED:  April 16, 2004.

22

23

24                                    Oliver W. Wanger
                                     UNITED STATES DISTRICT JUDGE

25

26

27

28

United States District Court
for the
Eastern District of California
April 19, 2004


* * CERTIFICATE OF SERVICE * *


1:02-cv-06256


Hutchins

    v.

USA

---

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  April 19, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

                              OWW DLB

        George Michael Gingo
        Cummings and Gingo
        470 East Herndon Avenue
        Suite 200
        Fresno, CA  93720

        Michael J Fannon
        Law Office of Michael Fannon
        470 East Herndon Avenue
        Suite 200
        Fresno, CA  93720

        Linda Anderson
        United States Attorney's Office
        1130 O Street
        Room 3654
        Fresno, CA  93721

        Robert K Hillison
        Caswell Bell and Hillison LLP
        5200 North Palm Avenue
        Suite 211
        Fresno, CA  93755-5259

        Mark E Shure

PRO HAC VICE
Keating and Shure LTD
150 North Wacker Drive
Suite 1550
Chicago, IL  60606

James M Jorissen
PRO HAC VICE
Oppenheimer Wolff and Donnelly LLP
Plaza VII
45 South Seventh Street
Suite 3300
Minneapolis, MN  55402-1609

Jay Scott Alexander
Murphy Austin Adams Schoenfeld LLP
PO Box 1319
1000 G Street
Third Floor
Sacramento, CA  95812-1319


Jack L. Wagner, Clerk

BY: _____
Deputy Clerk